Glenna HALL, Administratrix Ad Prosequendum and General Administratrix for the Estate of Velda Hall, deceased, and Glenna Hall, individually, Plaintiff,

v.

The UNITED STATES of America, The State of New Jersey, Dr. James V. Ortman, Dr. John F. Ledlie, Dr. George R. McWhorter, Dr. John Doe One, Dr. John Doe Two, John Doe Three and John Doe Four, jointly, severally and in the alternative, Defendants.

Civ. A. No. 81–2142.

United States District Court,
D. New Jersey.

Dec. 22, 1981.

Barry J. Hockfield, Hockfield & Levine, Cherry Hill, N. J., for plaintiff.

U. S. Atty. William W. Robertson by G. Donald Haneke, Asst. U. S. Atty., Trenton, N. J., for Defendants The United States of America, Dr. James V. Ortman, Dr. John F. Ledlie, Dr. George R. McWhorter, Dr. John Doe One, Dr. John Doe Two, John Doe Three and John Doe Four.

## OPINION

GERRY, District Judge.

Plaintiff Glenna Hall, individually and as Administratrix Ad Prosequendum of her daughter's estate, seeks monetary damages against the United States and several military physicians and/or other medical personnel for medical malpractice. Plaintiff charges that the physicians' negligence in decedent's pre-induction examination and subsequent treatment of the decedent during basic combat training, resulted in her death. The plaintiff asserts jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 1346 (FTCA). Plaintiff also names as a party defendant, and seeks monetary damages against, the State of New Jersey, as maintainer and operator of the Army National Guard unit in which the decedent Velda Hall enlisted. In Counts 3, 4, 7 and 8 of the complaint, the plaintiff charges the state with negligence in and a breach of warranty as to provision of medical care to enlistee Hall.

On motion of defendant State of New Jersey on September 18, 1981, this court, in an oral opinion, dismissed the complaint as to the State defendant on the ground that the Eleventh Amendment to the United States Constitution deprives the court of jurisdiction over suits for damages against a state. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Now the federal defendants also move for dismissal of the complaint.

On or about June 27, 1980, Velda Hall enlisted in the New Jersey Army National Guard. Three weeks later, Ms. Hall reported to the Armed Forces Examination and Entrance Section in Philadelphia for a medical examination to ascertain her fitness for military training. On the basis of that examination, military physicians, named here as individual defendants, pronounced decedent physically and mentally fit for military service. The Army immediately transported Ms. Hall to Fort McClellan, Alabama, to begin a six month regimen of combat training.

About three weeks into that training, on August 9, 1980, Ms. Hall was admitted to Fort McClellan's Noble Army Hospital, suffering from a high fever. Three days later, Ms. Hall died, apparently of a sort of pneumonia.[1]

Plaintiff alleges that military doctors in Philadelphia negligently examined and certified the decedent as medically fit for active military service. Plaintiff further alleges that military physicians at Fort McClellan failed properly to diagnose and treat Ms. Hall, such negligence proximately causing her death.

Plaintiff seeks monetary damages against both the physicians as individuals and against the United States for decedent's pain and suffering and for the pecuniary loss to her estate. While she claims jurisdiction solely under the FTCA, plaintiff also alleges a breach of warranty to provide decent medical care inherent in the enlistment contract. In that vein, plaintiff urges that as consideration for Velda Hall's enlist-

---

1. Plaintiff's complaint does not set out the precise physiological cause of death. Plaintiff's brief at 1 suggests that Ms. Hall entered the hospital with a 103° temperature; two hours later her fever ran to 105.2°. "Despite an enormously high white blood cell count, together with other indications of a massive infection in Velda's body revealed by blood tests conducted on August 9, and a chest x-ray also taken on August 9, 1980, which showed a left lower lobe pneumonia, she was treated only for heat exhaustion." Plaintiff's brief at 1.

ment, the United States warranted to provide quality medical care and treatment for the decedent, and that the Government breached the warranty in its provision of negligent treatment to Ms. Hall.

Defendant moves to dismiss the complaint under F.R.C.P. 12(b)(6), for failure to state a cognizable claim. It argues that the individual military doctors enjoy statutory immunity from suit for tortious medical care. 10 U.S.C. § 1089 (1976). (The Gonzalez Bill.) By its terms, in the Government's view, 10 U.S.C. § 1089 provides that the exclusive remedy, if any, for malpractice by a Government physician, is an action against the United States under the FTCA. Moreover, overwhelming authority, according to defendant, precludes an action by a serviceman or woman under the FTCA for negligence against another member of the armed forces, for injuries arising out of or incident to military service. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Therefore, defendant argues, plaintiff's only avenue of relief lies within the scheme of legislatively provided veterans benefits and/or service related disability programs established by Congress.[2]

In response to plaintiff's theory of breach of warranty, defendant maintains that mere denomination of the claim as "contractual" does not alter the claim's tortious essence. Such nomenclature cannot, in defendant's view, circumvent the conjuncture of immunities for individual doctors and the Government afforded by statutory and decisional law. Alternatively, assuming that plaintiff's claim does sound in contract, defendant urges that the Court of Claims enjoys exclusive jurisdiction to hear the matter.

I. *Claims Against the Individual Military Medical Personnel.*

■ The Gonzalez Bill, 10 U.S.C. § 1089, effectively grants immunity to the individu-

al defendants for negligent medical malpractice. The statute reads in pertinent part:

Defense of certain suits arising out of medical malpractice

(a) The remedy against the United States provided by sections 1346(b) and 2672 of title 28 for damages for personal injury, including death, caused by the negligent or wrongful act or omission of any physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (*including medical and dental technicians, nursing assistants, and therapists*) of the armed forces, the Department of Defense, or the Central Intelligence Agency in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of his duties or employment therein or therefor shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (or the estate of such person) *whose act or omission gave rise to such action or proceeding.*

10 U.S.C. § 1089(a) (1976). Indeed, Congress enacted 10 U.S.C. § 1089 intentionally to eliminate the need for personal malpractice insurance for all government medical personnel. S.Rep.No. 94–1264, 94th Cong., 2d Sess., *reprinted in* (1976) U.S.Code Cong. & Ad.News 4443. *See Hernandez v. Koch*, 443 F.Supp. 347, 349 (D.D.C.1977). Thus, plaintiff's sole recourse here lies in an action against the United States under the FTCA, 28 U.S.C. § 1346.

II. *Claims Against the United States Under the Federal Tort Claims Act.*

■ In *Feres v. United States*, the Supreme Court consolidated three claims sounding in tort by servicemen, or their

---

**2.** It is not clear from the submissions by the parties what precise compensation or relief plaintiff has sought under such programs. Both parties' papers indicate that the Halls filed some kind of claim with the Department of the Army, and that the Department denied

the claim. At oral argument, counsel indicated their understanding that the Army denied the claim on the ground that *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, barred any relief.

estate executors, under the FTCA. In *Feres v. United States*,[3] decedent had perished in a fire in a barracks in Camp Pine, New York, while on active duty. In *Jefferson v. United States*,[4] plaintiff serviceman sued Army doctors for leaving behind an 18″ by 30″ towel in his stomach during an abdominal operation. In *Griggs v. United States*,[5] decedent's executrix alleged that the victim died as a consequence of negligent medical care by defendant Army surgeons. In each of the three cases, said the Court, the "common fact" was that claimant, while on active duty, sustained injury due to the negligence of others in the armed forces.[6]

While admitting that the FTCA by its terms did not preclude these suits,[7] the Court interpreted the statute to bar tort claims by a serviceperson against other military personnel for injuries sustained "incident to service."

In the *Feres* Court's view, three factors counseled against interpreting the Act as it read, and in favor of finding a broad prescription of suits by injured military personnel against other military personnel. First, the FTCA constituted the Government's waiver of sovereign immunity only under circumstances from which would arise private liability. 340 U.S. at 141, 71 S.Ct. at 156; 28 U.S.C. § 2674. The Court, however, could find no liability of a private individual remotely analogous to the liability asserted against the United States in a military context.

We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving. . . . Nor is there any liability "under like circumstances" (quoting the statute) for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command. . . . The FTCA's effect is to waive immunity from recognized causes of action and was not to visit the Government with novel and unprecedented liabilities.

340 U.S. at 141–42, 71 S.Ct. at 157.

Second, the Court emphasized the irrationality of subjecting the "distinctly federal" relationship between the Government and its soldiers to the varying tort laws of each state, as would be required by the FTCA's rule that the law of the place of the injury governs the claim. 28 U.S.C. § 1346(b). To make the legal recourse of servicepersons depend upon their location—over which they exercise no control—would violate that "distinctly federal" character of the military relationship. 340 U.S. at 142–43, 71 S.Ct. at 157.

Finally, the *Feres* Court noted the existence of a comprehensive legislative scheme of benefits for service related injuries as a factor persuasive of eliminating the FTCA as a remedy for injured military personnel. *Id.* at 145, 71 S.Ct. at 158.

**3.** 177 F.2d 535 (2d Cir. 1949), *aff'd*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

**4.** 178 F.2d 518 (4th Cir. 1949), *aff'd*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152.

**5.** 178 F.2d 1 (10th Cir. 1949), *rev'd*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152.

**6.** 340 U.S. at 138, 71 S.Ct. at 155.

**7.** "We do not overlook considerations persuasive of liability in these cases. The Act does confer district court jurisdiction generally over claims for money damages against the United States founded on negligence. 28 U.S.C. § 1346(b). It does contemplate that the Government will sometimes respond for negligence of military personnel, for it defines "em-

ployee of the Government" to include "members of the military or naval forces of the United States," and provides that " 'acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." 28 U.S.C. § 2671. Its exceptions might also imply inclusion of claims such as we have here. 28 U.S.C. § 2680(j) excepts "any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, *during time of war*" (emphasis supplied), from which it is said we should infer allowance of claims arising from non-combat activities in peace." 340 U.S. at 138, 71 S.Ct. at 155. *See Griggs v. United States*, 178 F.2d 1, 3.

In a later case, *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Court noted still another factor for denying recovery under the FTCA: a concern for the effects of the maintenance of such suits upon military discipline. 348 U.S. at 112, 75 S.Ct. at 145. The rule of preclusion set out in *Feres* and noted in *Brown*, barring suits such as the instant proceeding, endures. *Peluso v. United States*, 474 F.2d 605 (3d Cir. 1973); *see also Miller v. United States*, 643 F.2d 481, 490–93 (8th Cir. 1981), *en banc.* As recently as 1977, the Supreme Court in *Stencel Aero Eng'r Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), affirmed the doctrine pioneered in *Feres.*

By the principle of *stare decisis*, this Court ultimately is bound to follow the rule. We do so, however, with profound misgivings, some of which courts and judges of undoubted sagacity have expressed before.

As an initial matter, it seems fair to reiterate that the various rationales or factors for denying access to remedies under the FTCA to plaintiffs such as Mrs. Hall have their genesis in the Supreme Court's decision in *Feres* to expand the plain terms of, and the exclusions stated in, the FTCA.[8] Thus, the factors counseling against liability, dispositive in *Feres* and its many progeny, run against the grain of the statute—and so have invited much criticism and comment.

The Court's recent decision in *Stencel Aero Eng'r Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) affords a point of departure for examining the factors of the *Feres* doctrine. In *Stencel*, a malfunction in the ejection mechanism of a fighter aircraft injured an air force pilot. The pilot sued the manufacturer, Stencel, in tort for defective design. Stencel sought indemnification against the United States, alleging that the Government had supplied both the specifications for, and most of the components of, the ejection system. The Court held that *Feres* barred the indemnification action; such an action, in the Court's view, would circumvent the rule of preclusion originating in *Feres.*

*Stencel* places significant reliance[9] upon the deleterious effect on military discipline of the maintenance of suits against military personnel for negligence.

> . . . At issue would be the degree of fault, if any, on the part of the Government's agents and the effect upon the serviceman's safety. The trial would, in either case, involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions.

431 U.S. at 673, 97 S.Ct. at 2059.

The *Stencel* Court derives the importance of this factor from *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 145, 99 L.Ed. 139. The Court in *Brown* in turn relied upon *Feres* to establish the significance of this consideration about military discipline, *citing Feres v. United States*, 340 U.S. at 141–143, 71 S.Ct. at 156. However, there is *no* mention in *Feres* at those pages, nor anywhere in the reported opinion, of the "detriment to discipline" that would arise if servicepersons might hale their superiors or other officers into court.

It is important to recognize that *Feres* did not explicitly discuss the military discipline factor. For *Feres* did preclude two suits in medical malpractice and thus compels the conclusion that plaintiff here has no cause of action against the United States under the FTCA. But *Feres* itself does *not* stand for the proposition that in a medical malpractice case, the possible deleterious effects of the maintenance of suit on military discipline are an important consideration.

Indeed, *Feres* itself does nothing to allay one's intuitive suspicion, argued by plain-

---

**8.** See note 7, *supra.*

**9.** *See Miller v. United States*, 643 F.2d 481, 483 (8th Cir. 1980), *rev'd on rehearing en banc*, 643 F.2d 481, 490 (1980), (stating that the effect of maintenance of suit upon military discipline has become the "most widely used basis for applying the *Feres* doctrine").

tiff's counsel here, that in a peace-time domestic army hospital, the military chain of command deserves no special deference. One suspects rather that the critical lines of authority are the same as in any hospital, public or private; such as they are, these schemes of authority and "medical discipline" are held accountable without intolerable impairment by the law of medical malpractice.

As for the "distinctly federal" character of the relationship between the soldier and his or her government, again a factor in *Feres*, we note in passing Justice Marshall's comment:

> It is true, of course, that the military performs "a unique nationwide function," *ibid.*, [431 U.S. at 672, 97 S.Ct. at 2059] but so do the Bureau of the Census, the Immigration & Naturalization Service, and many other agencies of the Federal Government. These agencies, like the military, may have personnel and machines in all parts of the country. Nevertheless, Congress has made private rights against the Government depend on "the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b).

*Stencel Aero Eng'r Corp. v. United States,* 431 U.S. at 675, 97 S.Ct. at 2059 (Marshall, J., dissenting).

Another prong of *Feres*, the lack of an analogous private right of action, would seem to have been undermined by the Court itself. As noted above, the *Feres* Court found the FTCA limited to allowing only rights of action against the government that had hitherto been allowed between private parties. But in *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), the Court, *citing Rayonier, Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1947) and *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122,

100 L.Ed. 48 (1955), stated that the FTCA now extends to "novel and unprecedented forms of liability." 374 U.S. at 159; *see* Note, Tort Remedies for Servicemen Injured by Military Equipment: A Case for Federal Common Law, 55 N.Y.U. Law Review 601, 631 n. 172 (1980).

In *Indian Towing Co.,* the Court declined to immunize the Government from FTCA suit for the Coast Guard's negligent operation of a lighthouse. The Government urged that the critical language of the Act, imposing liability "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, precluded liability in the conduct of activities which private persons do not perform— such as the operation of a lighthouse, 350 U.S. at 64, 76 S.Ct. at 124, or one might add, the maintenance of an army. The Court rejected that position noting in passing that it was not inconceivable that private persons might be allowed to operate a lighthouse. *Id.* at 66, 76 S.Ct. at 125.

In any event, it seems plausible to distinguish between certain aspects of the military function that cannot be performed by private armies, *e.g.*, the operation of combat instrumentalities—and those which are routinely performed in the civilian world, such as provision of medical care.

Notwithstanding such speculation, this court reiterates its reluctant conclusion that even the most critical scrutiny of the rationale underlying *Feres* cannot empower the court to ignore Supreme Court precedent. Nor can sympathetic sentiments expressed by our own Court of Appeals, a court critical of *Feres* and its progeny,[10] justify disobedience to precedent. Therefore, the court must dismiss the instant claim under the FTCA for failure to state a claim upon which relief may be granted. F.R.C.P. 12(b)(6).

---

10. *See, e.g., Peluso v. United States,* 474 F.2d 605 (3d Cir. 1973) (wrongful death action by parents of decedent member of the New Hampshire National Guard; decedent perished while on active duty at Fort Dix—alleged medical malpractice in treatment of abdominal complaint; "If the matter were open to us we would be receptive to appellants' argument that *Feres* should be reconsidered, and perhaps restricted to injuries occurring directly in the course of service. But the case is controlling. Only the Supreme Court can reverse it. While we would welcome that result, we are not hopeful . . . . Certainly the facts pleaded here cry out for a remedy." *Id.* at 606).

III. *The Warranty Theory.*

■ The court then finally turns to plaintiff's argument that the Government has breached a warranty—express and/or implied—springing from the enlistment contract—to provide quality medical care.

The gravamen of plaintiff's claim here is tortious: the negligent examination, diagnosis and treatment of the decedent on the part of military doctors.

Under similar circumstances, the Court of Claims has refused to allow a claimant to couch an essentially tort claim in contractual terms. *Jackson v. United States*, 573 F.2d 1189, 1199 (Ct.Cl.1978).

Plaintiff does allege that the enlistment contract warranted expressly or impliedly as to the provision of quality medical care. But plaintiff provides the court with no language in the enlistment contract or in federal statutes or regulations that might constitute an express warranty. By federal statute the defendant guarantees members of the armed services access to medical care. 10 U.S.C. § 1074. But that statute, presumably incorporated as part of an enlistment contract, contains no express warranty either.

Plaintiff apparently must rely upon a theory of implied warranty. Such an approach has undeniable appeal. When responsible authorities undertake to provide medical assistance, they assume obligations of *reasonable care* in the performance of that undertaking. But as a general matter, claims predicated upon breach of such an implied warranty sound essentially in tort. In any event, it eludes this court how a claim for breach of such an implied warranty would differ from the medical malpractice, or other negligence, claims precluded by *Feres* and progeny.[11] Plaintiff's attempt to cast its cause of action in contract terms cannot disguise the fundamen-

tal nature of this action: a claim that a duty of care owed by physicians or their superiors to the decedent was breached. Therefore we must hold that plaintiff's claim of breach of warranty fails to state a cognizable claim.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint is granted. Counsel for the Government shall promptly submit an order consistent with this opinion.

---

11. The Congress has provided a comprehensive statutory system of compensation for injuries to servicemen .... The Supreme Court has held that in establishing this system the Congress has limited the liability of the Government for service-connected injuries where the soldier sues in tort for money damages .... (Citations omitted.)

... Since a soldier cannot circumvent the compensation system by suing in tort for additional money damages for injuries there is no logical reason to allow him to circumvent the congressionally mandated limitations in a suit that he characterizes as one for breach of contract. *Jackson v. United States*, 573 F.2d 1189, 1198–99.