Cynthia Elaine SATTERFIELD, Administratrix of the Estate of Charles Arthur Hulstine, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 83–5930.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 25, 1985.

Decided April 18, 1986.

William B. Vest, argued, Hendersonville, Tenn., and Greg Neal, Neal, Stewart & Davis, Shelbyville, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Miles H. Franklin and Bruce E. Kasold, Dept. of the Army, Litigation Atty., and Anthony J. Steinmeyer argued, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KRUPANSKY and MILBURN, Circuit Judges, and JOINER, District Judge.*

KRUPANSKY, Circuit Judge.

In this wrongful death action invoking the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.*, (the "FTCA"), plaintiff Satterfield, administratrix of her decedent son's estate, appealed the district court's order dismissing her complaint against defendant United States pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

Plaintiff alleged that the death of her son, Private Charles Arthur Hulstine ("Hulstine"), was the direct and proximate result of the Army's negligence in accepting his enlistment and its negligence in failing to supervise his conduct and activities and the conduct and activities of his associates. Since this is an appellate review of a Rule 12(b) dismissal, the allegations of the plaintiff's complaint are required to be taken as true.

At age seventeen, Hulstine sought to enlist in the United States Army. Because Hulstine was a minor, he was required to obtain parental consent which was given in written form by his father. Although the recruiters were aware that his parents were divorced, they did not know that his mother, the plaintiff herein, was his sole legal guardian. Additionally, the recruiters were not aware of Hulstine's psychological and psychiatric history, nor his juvenile criminal record.

Hulstine was enlisted and ordered to Fort Knox, Kentucky for basic training. Personal differences soon developed between Hulstine and Army Privates Bryan Koenig ("Koenig"), Ronald D. Kinman ("Kinman") and Steven J. Adams ("Adams"), each of whom was also assigned to Hulstine's Company. The animosities between the individuals, which involved threats to and physical assaults on Hulstine, were brought to the attention of various supervisory personnel including the Company Commander. On May 30, 1980, weekend leave passes were authorized for Koenig, Kinman, Adams, Hulstine and others. Approximately four hours after having departed the base for the weekend, Hulstine was beaten to death by the three above-named off-duty servicemen.[1]

Plaintiff's Complaint averred that pursuant to Army Regulation A.R. 601–210 Chapter 3, the Army recruiters were negligent in failing to determine Hulstine's fitness for military service, and the validity of his father's parental consent to enlist. Plaintiff also asserted that due to the indifference of Hulstine's superiors at Fort Knox, the Army negligently failed to exercise proper supervision and control over Koenig, Kinman, and Adams in violation of A.R. 600–20, and negligently failed to warn and protect Hulstine from the three servicemen who ultimately killed him.

The district court determined that the plaintiff's cause of action was barred by both the *Feres* doctrine,[2] an exception to the FTCA which precludes recovery from the Government for injuries to servicemen which are incident to service, and by the "intentional tort exception" to the FTCA codified in 28 U.S.C. § 2680(h), which pre-

---

* Hon. Charles W. Joiner, United States Senior District Judge for the Eastern District of Michigan, sitting by designation.

1. Koening, Kinman and Adams each admitted to taking part in the killing, and are currently serving sentences in the Kentucky penitentiary.

2. *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950).

cludes liability for claims arising from an assault or battery.

The FTCA provides that the United States shall be liable for "injury or ... death caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances where the United States, if a private person, would be liable to the claimant ..." 28 U.S.C. § 1346(b). The Act "waives the Government's immunity from suit in sweeping language." *United States v. Yellow Cab Co.*, 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523 (1951). "However, this broad waiver of immunity is not without its exceptions." *Woodside v. United States*, 606 F.2d 134, 138 (6th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). The two exceptions to the FTCA joined in this appeal are the *Feres* doctrine and the intentional tort exception.

In *Feres*, the Supreme Court recognized an exception to the government's tort liability where military personnel seek damages from the United States for service-connected injuries. *See Woodside*, 606 F.2d at 138. The *Feres* doctrine forecloses military personnel from invoking the FTCA to recover damages for injuries which "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. In *United States v. Shearer*, ─── U.S. ───, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985), the Supreme Court synopsized the primary basis for its decision in *Feres* by stating:

> *Feres* seems best explained by the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty."

(Citations omitted). The *Shearer* Court continued that "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases." 105 S.Ct. at 3043.

Due to the remarkably similar factual scenario presented in *Shearer* to the case at bar, this court finds it dispositive of the assignments of error charged herein. In *Shearer*, the plaintiff was the mother and administratrix of Army Private Vernon Shearer ("Shearer"). 105 S.Ct. at 3041. While Shearer was off-duty and away from his military base, he was kidnapped and murdered by a Private Andrew Heard ("Heard"). *Id.* Plaintiff initiated an action pursuant to the FTCA charging the Army's negligent control and supervision of the two servicemen as the proximate cause of Shearer's death. *Id.* She alleged that "although the Army knew that Heard was dangerous (having been convicted of manslaughter while assigned to an Army base in Germany), it 'negligently and carelessly failed to exert a reasonably sufficient control over' him and 'failed to warn other persons that he was at large.'" *Id.*

The Third Circuit in that case ruled that *Feres* did not bar respondent's suit because "[g]enerally an off-duty serviceman not on the military base and not engaged in military activity at the time of injury, can recover under FTCA." 105 S.Ct. at 3041 (quoting *Shearer v. United States*, 723 F.2d 1102, 1106 (3d Cir.1983), *rev'd* ─── U.S. ───, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985)).

The Supreme Court unanimously (8–0) reversed the Third Circuit. In rejecting respondent's argument that the murder was not incident to Shearer's military service because it occurred when he was off-duty and away from his assigned military base, the Court responded:

> But the situs of the murder is not nearly as important as whether the suit requires the civilian to second-guess military decisions, *see Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977), and whether the suit might impair essential military discipline, *see Chappell v. Wallace*, 462 U.S. 296, 300, 304, 103 S.Ct. 2362, 2365, 2367, 76 L.Ed.2d 586 (1983).

*Shearer*, 105 S.Ct. at 3043. In emphasizing that respondent's complaint struck "at

the core of these concerns," the Court expressly determined that plaintiff's cause of action "goes directly to the 'management' of the military; it calls into question basic choices about the discipline, supervision, and control of a serviceman." *Id.* (footnote omitted). The Court concluded that:

> To permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, *and whether and how to place restraints on a soldier's offbase conduct.*
>
> \*   \*   \*   \*   \*   \*
>
> [R]espondent's attempt to hale Army officials into court to account for their supervision and discipline of Private Heard must fail.

*Id.* at 3044 (emphasis added).

In the case at bar, plaintiff's complaint harbored an identical allegation of Army negligence in the control and supervision of servicemen. The decedents in both cases were killed by fellow servicemen while off-duty and away from the base. Cognizant of the precise issue the *Feres* exception presented in these cases—whether decedents' deaths were incident to their military service—the two cases are indistinguishable. Since the Supreme Court unanimously concluded that the *Feres* doctrine applied to the facts attendant to *Shearer*, that case is dispositive and plaintiff's claim herein must also fail.

Plaintiff's attempt to distinguish the two cases is based on the tenuous assertion that in the instant action the Army violated an internal Army regulation (A.R. 600–20) by negligently failing to warn and protect Hulstine. The distinction is misplaced. The Supreme Court has acknowledged the impropriety of a civilian court involving itself in a military matter, especially where a military regulation is at issue:

> Congress has exercised its plenary constitutional authority over the military,

has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure.

*Chappell v. Wallace,* 462 U.S. 296, 301, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983). The Court admonished:

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Id.* (quoting *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953)).

Plaintiff's argument serves only to support the conclusion that the control and supervision of servicemen, *including* "whether and how to place restraints on a serviceman's off-base conduct," *Shearer,* 105 S.Ct. at 3044, "goes directly to the 'management' of the military ..." *Id.* at 3043.

■ Thus, it is patently clear that Hulstine's death, like Shearer's, was incident to his military service. Inasmuch as civilian courts are counseled not to "question basic choices about discipline, supervision, and control of a serviceman," *Shearer,* 105 S.Ct. at 3043, plaintiff's claim of negligent supervision and control was properly dismissed.

Plaintiff's allegation of negligent enlistment is equally without merit. Although several circuits have precluded recovery under the FTCA by determining that a serviceman's *enlistment* was incident to

service,[3] this court finds it unnecessary to reach that issue in resolving this particular claim.[4] Rather, the claim is readily disposed of by again focusing the inquiry on whether Hulstine's *death* was incident to his military service thereby invoking the *Feres* doctrine.

Having already concluded that Hulstine's death was incident to his military service, the *Feres* doctrine was properly applied to bar plaintiff's claim of negligent enlistment as well.

■ The intentional tort exception to the FTCA provides that governmental immunity under the Act will not apply to "[a]ny claim arising out of assault [or] battery ..." 28 U.S.C. § 2680(h). Plaintiff's wrongful death claim predicated on a negligence theory merely obfuscates the fact that Hulstine's death was a result of the battery committed on him by Koenig, Kinman and Adams. The question presented, therefore, is whether plaintiff's claim, that the Army's negligent supervision of these servicemen was the proximate cause of Hulstine's death, falls within the ambit of § 2680(h). Two other courts have recently answered that question in the affirmative.

Recalling the scenario in *Shearer, supra,* plaintiff therein alleged that the Army's negligent supervision was the proximate cause of her decedent-serviceman's death. The Supreme Court rejected plaintiff's claim and enounced:

> No semantical recasting of events can alter the fact that the battery was the immediate cause of Private Shearer's death and, consequently, the basis of respondent's claim.
>
> Respondent cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee.

105 S.Ct. at 3042 (emphasis in original).

Although the above passage from the *Shearer* opinion has equivocal precedential value,[5] this court finds the reasoning to be compelling. *See also Garcia v. United States,* 776 F.2d 116, 118 (5th Cir.1985) (Circuit court in reviewing applicability of § 2680(h) to a negligent supervision claim against the military "cannot ignore this strong signal from the Supreme Court," whereupon it adopted and applied the

---

3. Courts which have considered claims arising from alleged negligence in processing military personnel for enlistment have uniformly held that such claims are incident to service. *See, e.g., West v. United States,* 744 F.2d 1317 (7th Cir.1984) (alleged negligence in mistyping blood in preinduction physical), *cert. denied,* — U.S. ——, 105 S.Ct. 2113, 85 L.Ed.2d 478 (1985); *Hall v. United States,* 688 F.2d 821 (3d Cir.1982), *aff'g* 528 F.Supp. 963 (D.N.J.1981) (alleged negligence in preinduction physical resulting in death from apparent pneumonia three weeks later); *Calhoun v. United States,* 604 F.2d 647 (9th Cir. 1979), *aff'g and adopting opinion of district court* 475 F.Supp. 1 (S.D.Cal.1977) (alleged negligence and violation of military regulation in enlisting mental incompetent who made false statements on his enlistment application), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980); *Yolken v. United States,* 590 F.2d 1303 (4th Cir.1979) (alleged negligence in inducting and supervising mentally ill person who later committed suicide); *Healy v. United States,* 295 F.2d 958 (2d Cir.1961), *aff'g on opinion below* 192 F.Supp. 325 (S.D.N.Y.) (alleged negli-

gent determination in preinduction physical that plaintiff was fit for duty despite presence of heart condition).

4. Notably, however, the Supreme Court has consistently observed that the selection of personnel for the military is indeed a military decision not subject to judicial scrutiny:

> The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject, *always* to civilian control of the Legislative and Executive Branches.

*Shearer,* 105 S.Ct. at 3044 ((quoting *Chappell v. Wallace,* 462 U.S. at 302, 103 S.Ct. at 2366), (quoting *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973) (emphasis in original))).

5. Justice Powell did not participate in the decision; Justices Brennan, Blackmun, Stevens and Marshall declined to join in this language of the opinion opting to reverse the Third Circuit based solely on the *Feres* doctrine.

*Shearer* court rationale to bar plaintiff's claim).

Because plaintiff's complaint set forth an intentional tort claim merely sounding in negligence, such claim falls within the exception embodied in § 2680(h), and was therefore properly dismissed.

For the foregoing reasons, plaintiff's wrongful death action pursuant to the Federal Tort Claims Act was properly dismissed for lack of subject matter jurisdiction under both the *Feres* doctrine and 28 U.S.C. § 2680(h). Accordingly, the decision of the district court is hereby AFFIRMED.