**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0409n.06

**No. 18-2415**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 06, 2019
DEBORAH S. HUNT, Clerk

GHAZALA SIDDIQUI and MASOOD SIDDIQUI, )
Individually, and as Personal Representatives of the )
Estate of RAHEEL SIDDIQUI, Deceased, )
)
      Plaintiffs-Appellants, )
)
v. )
)
UNITED STATES OF AMERICA, )
)
      Defendant-Appellee. )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

---

**BEFORE:**    **SILER, STRANCH, and NALBANDIAN, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** This case resulted from the tragic death of Raheel Siddiqui, a private in the United States Marine Corps who fell to his death during basic training. His parents, Ghazala and Masood Siddiqui, sued the United States under the Federal Torts Claims Act (FTCA), alleging that the Government negligently misled Private Siddiqui into enlisting, assigned him to the command of officers already under investigation for abusing another Muslim recruit, failed to protect him from discriminatory abuse that led to his death, and failed to investigate fully the circumstances of his death. Because the doctrine announced in *Feres v. United States*, 340 U.S. 135 (1950), bars suits for tort claims arising from injuries incident to military service, we are bound to **AFFIRM** the district court's dismissal of the case for lack of subject matter jurisdiction.

## I.   BACKGROUND

The facts of this case are drawn from the First Amended Complaint.  Raheel Siddiqui, a native of Taylor, Michigan, was studying at the University of Michigan-Dearborn and working for a department store when he was approached by a Marine Corps recruiter.  On July 8, 2015, he signed enlistment papers, and on August 1, Siddiqui was accepted for enlistment in the Marine Corps' Delayed Entry Program (DEP), in which he spent eight months in part-time training as a member of the Marine Corps Reserve.  On his enlistment forms, he indicated that he was Muslim, and he was open to his recruiter about his faith.

After completing DEP training, on March 7, 2016, Siddiqui was sent to the Recruit Depot in Parris Island, South Carolina, where he signed a form granting his discharge from the DEP Program and accepting enlistment in the regular United States Marine Corps at the rank of private. Later that week, Private Siddiqui was assigned to Platoon 3042, Company K, Third Recruit Training Battalion, for basic training under the supervision of senior drill instructor Gunnery Sergeant Joseph A. Felix, Jr.  Neither Private Siddiqui nor his family were aware that Sergeant Felix had allegedly abused another Muslim recruit at the Parris Island Depot while intoxicated.

After less than one full day of training, on March 13, Private Siddiqui threatened to commit suicide and told military police that a supervisor had physically hit him.[1]  It was decided that he did not require emergency transport to the hospital.  The next day, a supervisor escorted Siddiqui to recruit liaison services, and he retracted his threat of suicide.  He was then deemed to be at a "low risk for harm" and returned to training.

---

[1] Because the Amended Complaint uses the word "Defendant" to refer to the United States Government, the Marine Corps, the Parris Island Recruit Depot, the Marine Corps Recruiting Station in Detroit, and 20 individual employees of those entities, it is unclear which individual is alleged to have hit Private Siddiqui. It is similarly unclear which specific individuals or entities Plaintiffs allege are responsible for other actions attributed to "Defendant," though all are employees or agencies of the Government.

On March 17, Private Siddiqui's platoon practiced mixed-martial-arts punching techniques. As was allegedly typical for "weaker" recruits in such exercises, Private Siddiqui was paired with a bigger, stronger recruit and subsequently sustained serious injuries. On March 18, he gave the following note to a supervisor:

> This recruit has to go to medical. This recruit's throat has been swollen for three days and is getting worse. This recruit also coughed blood a few times last night. And this recruit completely lost his voice and can barely whisper. This recruit's whole neck is in a lot of pain.

He was not permitted to go to the medical center or provided medical attention.

Later that day, Sergeant Felix found Private Siddiqui unconscious in the barracks and attempted to revive him by rubbing his sternum and slapping him. Shortly thereafter, Siddiqui fell to his death from a stairwell in the barracks. His death was ruled a suicide.

A Marine Corps Command Investigation into Private Siddiqui's death recommended punitive and administrative action against several Marines, including Sergeant Felix and his supervisor, Lieutenant Colonel Joshua Kissoon. Upon conviction by a court martial for violating orders, maltreatment, false official statements, and drunk and disorderly conduct, Sergeant Felix was dishonorably discharged and sentenced to ten years' confinement. Lieutenant Colonel Kissoon pled guilty to various charges.

The Siddiqui family received $100,000 from the Marine Corps death benefits program—a payment made to the survivors of any military personnel who die during active duty—and $400,000 from the Servicemen's Group Life Insurance program.

Plaintiffs Ghazala and Masood Siddiqui, on behalf of their deceased son and in their individual capacities, filed a complaint under the FTCA. They alleged that Marine Corps recruiters misled Private Siddiqui concerning enlisting by failing to warn him about abuse of other Muslim recruits at Parris Island, where he was sent. They brought claims of negligence, hazing, torture,

and other criminal acts leading to the abuse that resulted in Private Siddiqui's death. Plaintiffs also allege that the Government failed to investigate fully the circumstances of Private Siddiqui's death and aver his death was a result of torture and forced inhumane treatment, not suicide. (

The Government moved to dismiss for lack of subject matter jurisdiction. The district court, despite its strong reservations about the continued viability of the *Feres* doctrine, found that *Feres* applied and dismissed the case. Plaintiffs timely appealed.

## II.    ANALYSIS

"We review de novo a district court's determination of the applicability of the *Feres* doctrine." *Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009) (quoting *Fleming v. United States Postal Serv.*, 186 F.3d 697, 698 (6th Cir. 1999)).

The FTCA "permits the government to be sued for injuries caused by the negligence of government employees, acting within the scope of their employment, to the same extent that a private individual would be liable for such negligence." *Brown v. United States*, 462 F.3d 609, 611 (6th Cir. 2006); *see* 28 U.S.C. § 1346(b). In *Feres*, the Supreme Court carved out an exception, holding that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146. The Court has emphasized three broad rationales underlying *Feres*. "First, the relationship between the Government and members of its armed forces is distinctively federal in character." *United States v. Johnson*, 481 U.S. 681, 689 (1987) (alterations and internal quotation marks omitted). Second, the Government's "generous statutory disability and death benefits" provide "[t]hose injured during the course of activity incident to service . . . benefits that 'compare extremely favorably with those provided by most workmen's compensation statutes.'" *Id.* at 689–90 (quoting *Feres*, 340 U.S. at 143). "Third, . . . suits brought by service members against the Government for injuries incurred incident to service . . . are the '*type[s]* of claims that,

if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.'" *Id.* at 690 (quoting *United States v. Shearer*, 473 U.S. 52, 59 (1985)). In applying the *Feres* doctrine, we do not reduce it "to a few bright-line rules; each case must be examined in light of the [FTCA] as it has been construed in *Feres* and subsequent cases." *Shearer*, 473 U.S. at 57.

Plaintiffs' injuries arise from Private Siddiqui's death while on active duty, allegedly caused by the negligent actions and inactions of his military supervisors and recruiters. In cases involving similar facts, the Supreme Court and this court have applied *Feres* to bar suit against the Government. In *Shearer*, the mother of an Army private murdered by another serviceman off-base claimed that the Government knew of the other serviceman's prior murder and manslaughter convictions and negligently failed to control him or warn others that he was at large. *Id.* at 53–54. The Supreme Court found those claims barred by *Feres* because the allegation of negligence went "directly to the 'management' of the military" and "call[ed] into question basic choices about the discipline, supervision, and control of a serviceman." *Id.* at 58. The Court emphasized the importance of asking "whether the suit requires the civilian court to second-guess military decisions and whether the suit might impair essential military discipline," policy concerns that undergird *Feres*'s exception to the FTCA's waiver of sovereign immunity. *Id.* at 57 (internal citations omitted).

We addressed similar claims in *Satterfield v. United States*, 788 F.2d 395 (6th Cir. 1986), brought by the mother of Army private Charles Hulstine, who was beaten to death by three servicemen during basic training. *Id.* at 396. All four servicemen were off-duty and off-base at the time of the killing. *Id.* The plaintiff alleged that Army recruiters negligently recruited Private Hulstine, failed to supervise and control the servicemen who threatened and assaulted him before

the fatal beating, and failed to warn and protect him. *Id.* We concluded that Private Hulstine's death "was incident to his military service," even though the servicemen were off-duty and off-base, for the same reasons stated in *Shearer*. *Id.* at 398. Because we "focus[ed] the inquiry on whether Hulstine's *death* was incident to his military service," we found it unnecessary to decide whether his recruitment and enlistment were also incident to military service. *Id.* at 398–99 (emphasis in original). Instead, "[h]aving already concluded that Hulstine's death was incident to his military service," we held that "the *Feres* doctrine was properly applied to bar plaintiff's claim of negligent enlistment as well." *Id.* at 399.

Like the Army privates in *Shearer* and *Satterfield*, Private Siddiqui was an active serviceman at the time of his death. Like the plaintiffs in those cases, Plaintiffs Ghazala and Masood Siddiqui allege that the Government's negligence in failing to control Private Siddiqui's supervising officers led to their son's death. Because Plaintiffs' FTCA claims also "call[] into question basic choices about the discipline, supervision, and control of a serviceman," we are bound to apply the *Feres* doctrine. *Shearer*, 437 U.S. at 58.

Plaintiffs argue that because Marine Corps recruiters made misrepresentations to entice Private Siddiqui to enlist, their claim of negligent enlistment arises before their son began military service, and *Feres* thus does not apply. But, as discussed in *Satterfield*, if Siddiqui's death was incident to his military service, then a claim of negligent enlistment relating to his death is also barred by *Feres*. *See Satterfield*, 788 F.2d at 399. Plaintiffs also cite to *Hajdusek v. United States*, No. 16-CV-340-SM, 2017 WL 4250510 (D.N.H. Sept. 21, 2017), arguing that during their son's training in the DEP program, he was a "poolee," not an active duty member of the armed services, and was not engaging in activity incident to service. But Private Siddiqui's death occurred after he left the DEP program and enlisted in the Marine Corps. There is no dispute that Siddiqui was

on active duty when he died, and we conclude that his death during basic training falls squarely within the wide reach of the *Feres* doctrine. *See Lovely*, 570 F.3d at 782–83.

Insofar as Plaintiffs also bring claims that the Government violated internal regulations regarding treatment of recruits and violated the Eight Amendment in subjecting Private Siddiqui to "punishments involving torture," those claims are also barred by *Feres*. *See Satterfield*, 788 F.2d at 398 (noting the "impropriety of a civilian court involving itself in a military matter, especially where a military regulation is at issue"); *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (holding that "it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers" for constitutional violations).

Finally, Plaintiffs call upon us to disregard or overrule *Feres*. We would not be the first court to consider doing so. As the Ninth Circuit noted, "We can think of no other judicially-created doctrine which has been criticized so stridently, by so many jurists, for so long." *Ritchie v. United States*, 733 F.3d 871, 878–79 (9th Cir. 2013). In 1987, Justice Scalia wrote, in a dissent joined by Justices Brennan, Marshall, and Stevens, that "*Feres* was wrongly decided and heartily deserves the 'widespread, almost universal criticism it has received.'" *Johnson*, 481 U.S. at 700 (Scalia, J., dissenting) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 580 F. Supp. 1242, 1246 (E.D.N.Y. 1984)). More recently, Justice Thomas has urged reconsideration of *Feres*. *See Daniel v. United States*, 139 S. Ct. 1713 (2019) (Thomas, J., dissenting from denial of cert.); *Lanus v. United States*, 570 U.S. 932 (2013) (Thomas, J., dissenting from denial of cert.). We also acknowledge the district court's appropriate challenge to the generosity of the death benefits provided:

> [T]he *Feres* doctrine's reliance on "generous" military no-fault compensation has not withstood the test of time. A $100,000 death benefit and $400,000 in a group life insurance payout are mere fractions of most wrongful death awards. The September 11th Fund's wrongful death awards were in the $2-$3 million-dollar range. Eric Posner & Cass Sunstein. Dollars and Death, 72 U CHI. L. REV. 537 (2005). Those awards considered modern tort principles, including the focus on

deterrence and compensation. *Id.* Private Siddiqui's death benefit is woefully out-of-step with such principles.

Unless and until the Supreme Court overturns *Feres*, we remain bound by the *Feres* doctrine and accordingly find Plaintiffs' claims barred for lack of subject matter jurisdiction.

### III.   CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's dismissal of the case.