**Don H. MAJOR, administrator of the estate of Debra Lynn Spradlin, deceased, and Charles L. Mauk, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 86–6226.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 16, 1987.

Decided Dec. 16, 1987.

William T. Warner, argued, Conliffe, Sandmann, Gorman, Sullivan, William L. Hoge, III, Louisville, Ky., for plaintiffs-appellants.

Joseph M. Whittle, U.S. Atty., Louisville, Ky., James H. Barr, Mel Olmscheid, Army Judge Advocate Gen., Melvin G. Olmscheid, argued, Dept. of the Army, Washington, D.C., for defendant-appellee.

Before WELLFORD and GUY, Circuit Judges; and HIGGINS, District Judge.[*]

PER CURIAM.

Plaintiffs, Don Major, as administrator of the estate of Debra Spradlin, and Charles Mauk, appeal from the district court's order dismissing their consolidated complaints for lack of subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Both Spradlin and Mauk were enlisted members of the United States Army and had brought suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, for the death of Spradlin and injuries suffered by Mauk when they were involved in an accident on their military base in Fort Campbell, Kentucky. The trial court's dismissal was predicated on its conclusion that such suits are barred by the *Feres* doctrine, *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which precludes recovery under the FTCA for injuries sustained by military personnel that arise from activity "incident to service." *Id.* at 146, 71 S.Ct. at 159. We agree and affirm.

### I.

The facts relative to this appeal are simple and uncontested. At approximately 10:30 p.m. on the evening of March 17, 1983, Spradlin and Mauk were sitting on Mauk's motorcycle, which was stopped well off one of the roads within the Fort Campbell Military Reservation. An Army non-commissioned officer, William Lane, ran his vehicle off the road and struck the motorcycle, killing Spradlin and severely injuring Mauk. Lane had become intoxicated and his driving impaired at an on-base party held in his company barracks and attended by several others, including some of his superiors. While not actually on duty at the time of the accident, both Spradlin and Mauk were on active duty status and neither were on a pass or furlough.

### II.

Our result in this case is reached by an analysis of a series of Supreme Court precedents both leading up to the adoption of the *Feres* doctrine and subsequently giving that doctrine form and substance. In *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the Court was faced with a claim brought pursuant to the FTCA by members of the armed forces who were injured while on furlough in a collision with an Army truck. The Court held their claim to be within the ambit of the FTCA's conferral of jurisdiction over "*any* claim founded on negligence brought against the United States," stating "[w]e are not persuaded that 'any claim' means 'any claim but that of servicemen.'" *Id.* at 51, 69 S.Ct. at 919. The Court gave short shrift to the government's protestations of "dire consequences" for the military which would allegedly result from a finding that plaintiffs' injuries were incident to their military service. In reaching this conclusion, the Court reasoned that "we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired." *Id.* at 52, 69 S.Ct. at 920. However, the Court also observed that "[w]ere the accident incident to the Brooks' service, a wholly different case would be presented." *Id.*

---

[*] Honorable Thomas A. Higgins, United States District Court, Middle District of Tennessee, sitting by designation.

One year later, that "wholly different case" arrived in *Feres*. Although *Feres* was comprised of three consolidated cases, the facts in the *Feres* case itself are most illustrative of the Court's new position on the availability of relief for military personnel under the FTCA. *Feres* was killed by fire in his barracks while on active duty status. His executor alleged negligence in quartering him in barracks which were known, or should have been known, to be unsafe. The Court in *Feres* gave a much narrower construction to the FTCA's waiver of sovereign immunity with respect to the military in general and, significantly, it also eschewed any attempt to engage in an individualized interpretation of what constituted an "injury incident to service." Rather, the Court automatically equated events occurring while an employee was on "active duty" with those "incident to the service," thereby effectively barring all claims for injuries taking place while one is on active duty. 340 U.S. at 138, 71 S.Ct. at 155.

In the past five years, the Supreme Court has decided four cases under the *Feres* doctrine and in each case it reversed a finding of federal jurisdiction by the court of appeals. *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), and *United States v. Stanley*, — U.S. —, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), both involved attempts to bring direct claims for violation of constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 2d 619 (1971). In *Chappell*, a class of black enlistees sued their military superiors for racial discrimination in making duty assignments, giving performance evaluations, and imposing penalties. In barring damage suits by military personnel for constitutional violations, the Court emphasized that "[t]he special nature of military life— the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel— would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command." 462 U.S. at 304,

103 S.Ct. at 2367. The Court also relied on Congress' constitutionally created authority over the military in concluding that special factors existed which counselled against the implication of a judicially imposed *Bivens*-type remedy for military personnel. *Id.*

In *Stanley*, plaintiff sued the government after he learned that, while in the Army in the 1950's, he was secretly administered LSD as part of a program to test the effects of the drug on human subjects. 107 S.Ct. at 3057. He alleged that the drug had caused personality changes which resulted in his discharge and the dissolution of his marriage. Plaintiff's FTCA claim had previously been dismissed by the court of appeals, and he was barred by the Supreme Court from renewing that claim in the current proceeding. In addition, the court held that since plaintiff's *Bivens* claim was subject to the constraints of *Feres*, as established by the Court's decision in *Chappell*, it was also barred provided his injury was incurred "incident to service." The Court ruled that Stanley was precluded from contesting the relationship between his injury and his military status because the court of appeals had already decided this issue by virtue of its earlier dismissal of his FTCA cause of action. In opting for the relatively bright-line "incident to service" test of *Feres* for use in *Bivens* actions as well, Justice Scalia, writing for the majority, pointed out that:

> [a] test for liability that depends on the extent to which particular suits would call into question military discipline and decision-making would itself require judicial inquiry into, and hence intrusion upon, military matters. Whether a case implicates those concerns would often be problematic, raising the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands. Even putting aside the risk of erroneous judicial conclusions ... the mere process of arriving at correct conclusions would disrupt the military regime.

107 S.Ct. at 3063.

*United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), and

*United States v. Johnson,* —— U.S. ——, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), both involved attempted suits under the FTCA by military personnel. In *Shearer,* plaintiff's decedent was an Army private who was kidnapped and murdered by another serviceman while off duty and away from the base. Plaintiff alleged that Army negligence had caused her son's death. In reversing the court of appeals' conclusion that "an off-duty serviceman not on the military base and not engaged in military activity at the time of injury, can recover under FTCA," *Shearer v. U.S.,* 723 F.2d 1102, 1106 (3d Cir.1983), the Court found the relevant inquiry to be not the situs of the act or incident but "whether the suit requires the civilian court to second-guess military decisions, and whether the suit might impair essential military discipline." 473 U.S. at 57, 105 S.Ct. at 3043. (citations omitted). The Court concluded that an impermissible level of civilian judicial involvement would result if this type of case were permitted, since commanding officers would likely have to testify about their practices and policies in disciplining subordinates and dictating their off-base conduct. *Id.* at 58, 105 S.Ct. at 3044.

In *Johnson,* plaintiff's husband was killed in a helicopter crash during a rescue mission due to the alleged negligence of an air traffic controller employed by the Federal Aviation Administration (FAA). The Court once again reversed the court of appeals by applying the *Feres* doctrine, even though the alleged negligence did not involve any military personnel. In the same way it had held that the *situs* of the incident was not determinative in *Shearer,* the Court found that the *status* of the tortfeasor as a civilian governmental employee was similarly insignificant. Since the accident had occurred while the pilot was engaged in a service-related mission, suit was barred because its maintenance would "necessarily implicate[ ] the military judgments and decisions that are inextricably intertwined with the conduct of the military mission." 107 S.Ct. at 2069.[1]

### III.

Review of these Supreme Court precedents makes it clear that in recent years the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which

---

1. Interestingly, Justice Scalia, who authored the Court's opinion in *Stanley,* dissented in *Johnson.* He explained his rationale for this seeming inconsistency as follows:

> Today, no more than when we wrote *Chappell,* do we see any reason why our judgment in the *Bivens* context should be any less protective of military concerns than it has been with respect to FTCA suits, where we adopted an "incident to service" rule. In fact, if anything we might have felt more free to compromise military concerns in the latter context, since we were confronted with an explicit congressional authorization for judicial involvement that was, on its face, unqualified; whereas here we are confronted with an explicit constitutional authorization for *Congress* "[t]o make Rules for the Government and Regulation of the land and naval Forces," U.S. Const. Art. I, § 8, cl. 14, and rely upon inference for our own authority to allow money damages.

*Stanley,* 107 S.Ct. at 3062 (footnote omitted).

In his dissent in *Johnson,* Justice Scalia found it "strange that Congress' 'obvious' intention to preclude *Feres* suits because of their effect on military discipline was discerned neither by the *Feres* Court nor by the Congress that enacted the FTCA (which felt it necessary expressly to exclude recovery for combat injuries)." 107 S.Ct. at 2073. Clearly, his disagreement with the majority lies in its interpretation of the FTCA, which he finds unambiguous in permitting suits by servicepersons for injuries arising from military negligence. Justice Scalia stated, "I do not think the effect upon military discipline is so certain, or so certainly substantial, that we are justified in holding (if we can ever be justified in holding) that Congress did not mean what it plainly said in the statute before us." *Id.* He concluded that "the line between FTCA suits alleging military negligence and those alleging civilian negligence has nothing to recommend it except that it would limit our clearly wrong decision in *Feres* and confine the unfairness and irrationality that decision has bred." *Id.* 107 S.Ct. at 2075.

it arose.[2] Although the doctrine itself as well as its recent expansion have been decried by various courts and commentators, *see* authorities cited in *Johnson*, 107 S.Ct. at 2074 (Scalia, J., dissenting), we are bound to observe the Court's clear directive on this issue. Indeed, we have recently found *Shearer* controlling in a case involving the beating death of an off-duty serviceman by three of his fellow enlistees, also free on weekend passes. *Satterfield v. United States*, 788 F.2d 395 (6th Cir. 1986) (applying both *Feres* and FTCA exception for intentional torts at 28 U.S.C. § 2680(h) to bar suit).

Plaintiffs in the case at bar attempt to distinguish *Shearer* by alleging that the allegation in their complaint as to negligent supervision is merely "alternative" and "collateral"; no military decision-making process is implicated because the relevant "decision" was made when the regulations allegedly prohibiting on-base consumption of alcohol were promulgated, and this suit challenges only the *failure* to follow those regulations; and military discipline would not be impaired because the tortfeasor, Lane, has already been court-martialed.[3] These attempted distinctions are unpersuasive. The district court found, and we agree, that since Spradlin and Mauk were on active duty status at the time of the accident, the actions of their superiors and Lane were "command decisions." A challenge to these actions would require those superiors either in attendance at the party at which Lane became intoxicated or with knowledge of that gathering to testify about military decisions relating to the provision and/or consumption of alcohol on base as well as disciplinary policies for infractions of such rules. It would also result in judicial prying into the knowledge or lack thereof of any unauthorized practices and would involve second-guessing of military decisions and orders with respect to the operation of the installation. Furthermore, we specifically rejected a similar allegation of Army violation of its own internal regulations as grounds for avoiding the *Feres/Shearer* bar in *Satterfield*, concluding that that claim also impermissibly insinuates the civilian judiciary into military disciplinary decisions. 788 F.2d at 398.

Since we find no supportable basis for concluding that this suit will not "call[ ] into question basic choices about the discipline, supervision, and control of [servicemen]," *Shearer*, 473 U.S. at 58, 105 S.Ct. at 3043, the district court's dismissal for lack of subject-matter jurisdiction is AFFIRMED.

---

**2.** As Justice Scalia observed in his dissent in *Johnson*, *Brooks* has neither been overruled nor even expressly disapproved by the Court. Nevertheless, it is obvious that, contrary to the Court assertion in *Brooks*, it has now been "persuaded" that the phrase "any claim" contained in the FTCA *does* mean "any claim but that of servicemen." *See Brooks*, 337 U.S. at 51, 69 S.Ct. at 919. Although the *Shearer* Court attempted briefly to distinguish *Brooks*, 473 U.S. at 58, 105 S.Ct. at 3043–44, its rationale has clearly been significantly, if not fatally, undermined.

**3.** At the time this case was briefed, the parties did not have the benefit of the Supreme Court's opinions in *Johnson* and *Stanley;* hence their reliance on *Feres* and *Shearer* as setting forth the totality of the law on this question. In fact, plaintiffs specifically cite the courts of appeals' opinions in both *Johnson* and *Stanley* (both subsequently reversed) in support of their position.

Plaintiffs also rely heavily on a factually similar case, *Johnson v. United States*, 704 F.2d 1431 (9th Cir.1983), in which the plaintiff was permitted to escape the *Feres* jurisdictional bar because the court found that his activity at the time of injury—being driven home by an intoxicated fellow serviceman following an off-duty party—was not "incident" to military service" as envisioned by *Feres*. However, since that case was decided prior to all of the Supreme Court's recent *Feres* decisions, we conclude that its rationale as well as its result are now suspect and should not be followed.