977 F.2d 584
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald J. WRIGHT, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-2404.
 United States Court of Appeals, Sixth Circuit.
 Oct. 9, 1992.
 
 Before RALPH B. GUY, Jr. and BATCHELDER, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The plaintiff, a former servicemember, appeals the dismissal of his Federal Tort Claims Act action arising from a traffic accident on a military base. Finding that the plaintiff's claim is barred because his injury was incident to his military service, we affirm.
 
 I.
 
 2
 On October 19, 1987, Ronald Wright, a private in the United States Army, and other members of the 34th Transportation Unit attended a picnic just outside the grounds of the Fort Campbell, Kentucky, Army base. At formation that morning, the unit's commanding officer announced the picnic to celebrate the completion of the unit's training exercises. Attendance at the picnic was voluntary and, since the day had been designated as a "Day of No Scheduled Activity" (DONSA), members of the unit were free to pursue their own interests on or off the base.
 
 
 3
 Wright, driving his own car, picked up two friends at their home off the base and drove to the picnic site. After staying several hours, Wright decided to return to his barracks to attend to personal business. He planned to return to the picnic to pick up his friends.
 
 
 4
 Wright drove across a large, undeveloped portion of the base, known as the "reservation," on the way to his barracks. While on the reservation, Wright spotted a dirt road that he had never noticed before. He turned onto the road to see where it went.
 
 
 5
 At a curve in the road, Wright collided head-on with an Army truck driven by Sergeant Brendan Barber. At the time of the accident, Barber was returning to the main garrison after dropping off a group of soldiers for a training exercise. Both men survived the accident, but Wright suffered serious injuries.
 
 
 6
 In April 1990, Wright filed this action against the government under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 et seq. The complaint alleged that the government was liable for Barber's negligence and for its own negligence in failing to train and supervise Barber and for allowing Barber to drive the truck alone and without certain safety equipment.
 
 
 7
 The district court granted the government's motion for summary judgment in October 1991. The court held that Wright's injuries were incident to his military service and that, therefore, his claim is barred under the doctrine of Feres v. United States, 340 U.S. 135 (1950). Wright filed this appeal.
 
 II.
 
 8
 The only issue we must decide is whether, given the undisputed facts of the accident, Wright's injuries were incident to military service and therefore within the bar of the Feres doctrine. We review the district court's grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990).
 
 
 9
 A review of the Feres doctrine properly begins one year before Feres with Brooks v. United States, 337 U.S. 49 (1949). In Brooks, the Court held that two servicemen could sue the government for injuries they sustained while on furlough when their vehicle collided with an Army truck. The Court concluded that the accident had nothing to do with the plaintiffs' status as servicemen, but observed that a different case would have been presented if the accident had been incident to the plaintiffs' military service. Id. at 52.
 
 
 10
 That different case presented itself in Feres. Feres consisted of three consolidated cases, two involving allegations of negligent treatment by military surgeons and a third involving a serviceman killed in a barracks fire. The Court distinguished Brooks by noting that "[t]he common fact underlying the three cases [in Feres ] is that each claimant, while on active duty and not on furlough, sustained injury due to the negligence of others in the armed forces." Id., 340 U.S. at 138. The Court held that none of the three claims could proceed, concluding that the government is not liable under the FTCA for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146.
 
 
 11
 In a series of decisions during the 1980s, the Court expanded the Feres doctrine. In Chappell v. Wallace, 462 U.S. 296 (1983), and United States v. Stanley, 483 U.S. 669 (1987), the plaintiffs brought claims for alleged violations of their constitutional rights pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). In Chappell, the plaintiffs charged their superior officers with racial discrimination in making duty assignments, completing performance evaluations, and imposing discipline. In Stanley, the Army had administered LSD to the plaintiff as part of a secret program to test the drug on unwitting human subjects.
 
 
 12
 In both cases, the Court held that the Feres doctrine barred the plaintiffs from maintaining a Bivens action against the government. The Court gave great weight to the military's need to maintain discipline and the potentially disruptive effect of judicial intervention into military decisionmaking. Stanley, 483 U.S. at 682-83; Chappell, 462 U.S. at 304-05. However, the Court declined an invitation to apply Feres only to those cases that implicate military discipline and decisionmaking, expressing concern that the inquiry necessary to identify such cases would itself disrupt the military. Stanley, 483 U.S. at 683. Instead, the Court reaffirmed the "relatively clear" "incident to service" test. Id.
 
 
 13
 In both United States v. Shearer, 473 U.S. 52 (1985) and United States v. Johnson, 481 U.S. 681 (1987), the plaintiffs brought FTCA claims arising out of military service. In Shearer, the plaintiffs decedent had been murdered by a fellow servicemember while off duty and away from the base. The plaintiff alleged that the Army was negligent for failing to control the conduct of the murderer, failing to warn others about his dangerous tendencies, and allowing him to continue his service. The Court, concluding that an impermissible level of judicial intrusion into military discipline and decisionmaking would result if this type of claim were permitted, held that the Feres doctrine barred the action. Shearer, 473 U.S. at 59.
 
 
 14
 In Johnson, the plaintiff's husband was killed during a rescue mission due to the alleged negligence of a civilian air traffic controller. The Court held that the civilian status of the alleged tortfeasor was irrelevant to the Feres analysis. Johnson, 481 U.S. at 686-88. Since the plaintiff's husband was killed during a military rescue mission, the Court found that the case fell within the heart of the Feres doctrine. Id. at 691-92.
 
 
 15
 The Court in Johnson articulated three broad rationales underlying the Feres doctrine. First, since the relationship between servicemembers and the government is "distinctively federal in character," it would be irrational for the government's liability to turn on the situs of the injury or accident as it would in an FTCA claim. Johnson, 481 U.S. at 689. Second, since the FTCA was designed to provide a remedy for those who had no other remedy and since Congress has provided generous benefits to injured servicemembers, Congressional intent would be frustrated if injured servicemembers could bring FTCA actions. Id. at 690. Third, such suits are barred because "they are the 'type[s] of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.' " Id. (quoting Shearer, 473 U.S. at 59; emphasis in original).
 
 
 16
 Five years ago, we reviewed these Supreme Court decisions and concluded that:
 
 
 17
 [T]he Court has embarked on a course dedicated to broadening the Feres doctrine to encompass, at a minimum, all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which it arose.
 
 
 18
 Major v. United States, 835 F.2d 641, 644-45 (6th Cir.1987) (emphasis in original; footnote omitted), cert. denied, 487 U.S. 1218 (1988).[1]
 
 
 19
 Major, like this case, arose from a traffic accident at Fort Campbell. After becoming intoxicated at a party on the base, an officer drove his car off the road and struck two off-duty servicemembers, killing one and injuring the other. We held that the plaintiffs' claim was barred by the Feres doctrine because the case would involve prying into military decisions relating to the provision of alcohol and the operation of the base. Id., 835 F.2d at 645.
 
 
 20
 Like the servicemembers in Major, Wright was injured, while off-duty but on the base, when he was struck by a vehicle driven by a fellow servicemember. Wright attempts to distinguish Major in several ways. First, he points out that he was injured during a DONSA, while the servicemembers in Major apparently did not have the entire day off. Wright analogizes his situation to that of the plaintiff in Brooks, who was injured while on a furlough.
 
 
 21
 We find this attempted distinction unpersuasive. In Major, we explained that the Court's recent decisions had "significantly, if not fatally, undermined" the rationale of Brooks. Major, 835 F.2d at 645 n. 2; see also Satterfield v. United States, 788 F.2d 395, 398 (6th Cir.1986) (holding that soldier's beating death was incident to his military service even though he was off-base on a weekend pass).
 
 
 22
 Even if Brooks were still controlling precedent, this case is easily distinguishable. Wright's accident occurred on the base while he was on the way to his barracks from a party organized by his commanding officer. Therefore, Wright's injury is much more closely connected to his service than the injuries in Brooks, which occurred away from the base while the servicemembers were on furlough.
 
 
 23
 Second, Wright argues that, unlike Major, his case would not implicate military discipline and decisionmaking. However, the Court explained in Johnson that a claim is barred if it is the type of claim that could implicate discipline and decisionmaking, even if the particular claim would not involve such concerns. 481 U.S. at 690. Wright's claim clearly implicates such concerns since he alleges that the Army negligently failed to train and control Barber and that the Army should have included certain safety features on Barber's truck. Even Wright's allegation that the government is liable as Barber's master is a claim of the type that could implicate military discipline and decisionmaking, since Barber's conduct must be examined with reference to military traffic regulations.
 
 
 24
 We find each of the three rationales for the Feres doctrine to be applicable to Wright's claim. Wright's relationship with the Army was a federal one; Wright has received benefits from the government for his injuries; and, as we have discussed, Wright's claim would implicate military discipline and decisionmaking. Cf. Sidley v. United States Dep't of Navy, 861 F.2d 988, 991 (6th Cir.1988) ("all three rationales underlying the Feres doctrine need not be present in order for courts to utilize the doctrine").
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 Wright points to several cases in which we stated that a greater relationship between the injury and the service is required before the Feres doctrine applies. See Woodside v. United States, 606 F.2d 134, 141 (6th Cir.1979) (stating that doctrine applies if there is "significant link" between service and injury), cert. denied, 445 U.S. 904 (1980); Hale v. United States, 416 F.2d 355, 360 (6th Cir.1969) (suggesting, but not deciding, that doctrine applies only if injury occurs in line of duty). Wright's reliance on these cases is misplaced since they predate the Supreme Court's expansion of the Feres doctrine