Leon FLEMING, Plaintiff–Appellant,

v.

UNITED STATES POSTAL SERVICE, POSTMASTER GENERAL; Danny Caughron, Sr., Defendants–Appellees.

No. 98–5724.

United States Court of Appeals, Sixth Circuit.

Argued: May 18, 1999.

Decided and Filed: Aug. 4, 1999.

Timothy R. McCarthy (argued and briefed), Nutt, Mayer & Stein, Louisville, Kentucky, for Plaintiff–Appellant. Terry M. Cushing (briefed), Richard A. Dennis, Assistant U.S. Attorney (argued and briefed), Louisville, Kentucky, for Defendants–Appellees.

Before: NORRIS and COLE, Circuit Judges; HOLSCHUH,* District Judge.

## OPINION

COLE, Circuit Judge.

Leon Fleming brought a personal injury action against the United States Postal Service (Postal Service) under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq. Upon the Postal Service's motion, the district court dismissed the action for lack of subject matter jurisdiction. Specifically, the court found that the Feres doctrine barred Fleming's suit. For the following reasons, we **REVERSE**.

### I.

Because the district court granted a jurisdictional motion to dismiss without holding an evidentiary hearing, the facts are presented in the light most favorable to the plaintiff. See Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998). Fleming is a Sergeant Major in the United States Army. During the time period relevant to this case, he was stationed at Fort Knox, Kentucky. Fleming lived in Louisville, however, about a forty-five min-

ute drive from the base. At around 4:40 a.m. on September 22, 1994, Fleming was in Louisville, driving to a sit-down breakfast at either a McDonald's or a Dairy Queen restaurant. He did not make it. At the intersection of Ferndale and Bardstown roads, a postal delivery truck ran a stop sign and struck Fleming's car. Fleming was not on duty at the time and was not required to be at the base until 8:00 a.m. The district court concluded, however, that Fleming's "ultimate destination" was Fort Knox.

After his demand for compensation was denied, Fleming filed a state law tort action against the Postal Service alleging negligence on the part of its truck driver and jurisdiction under the FTCA. The Postal Service subsequently filed a motion to dismiss for lack of subject matter jurisdiction, seeking application of the Feres doctrine. The district court agreed, dismissing the case. This timely appeal followed. We review de novo a district court's determination of the applicability of the Feres doctrine. See Skees v. United States, 107 F.3d 421, 422–23 (6th Cir.1997); see also Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir.1998).

### II.

The federal government cannot be sued without its consent. See Reed v. Reno, 146 F.3d 392, 398 (6th Cir.1998). The FTCA provides such consent in certain cases, stating in its relevant part that:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674. However, not all claims against the government fall within this

---

\* The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

safe harbor. The language of the FTCA exempts from the act's general waiver of sovereign immunity claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). In a trilogy of mid-century cases, *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); and *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Supreme Court broadened this exemption, creating what has become known as the *Feres* doctrine. The doctrine provides that federal courts lack subject matter jurisdiction over all tort claims by service members against the government for injuries that "arise out of or in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. 153.

■ Although this much-criticized rule of law may be simply stated, *see, e.g., United States v. Johnson,* 481 U.S. 681, 701 n. 1, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (Scalia, J., dissenting) (citing cases and commentary critical of the doctrine), its application is not always so neat. Whether an activity is incident to service "cannot be reduced to a few bright line rules; each case must be considered in light of the [FTCA] as it has been construed in *Feres* and subsequent cases." *United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). An examination of these cases indicates that the Supreme Court intends the doctrine to be applied broadly.

> Supreme Court precedents make[ ] it clear that in recent years the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, all injuries suffered by military personnel that are remotely related to the individual's status as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat

purpose of the military activity from which it arose.

*Major v. United States,* 835 F.2d 641, 644–45 (6th Cir.1987); *see also Skees,* 107 F.3d at 423–24 (quoting *Major* and noting that incident-to-service is not "limited to military training and combat"); *Sidley v. United States,* 861 F.2d 988, 990 (6th Cir. 1988) ("[T]he *Feres* doctrine extends beyond situations where the soldier is acting pursuant to orders or while subject to direct military command or discipline.").

The Supreme Court has also stated that three rationales underlie the *Feres* doctrine. In *Johnson,* the Court first noted that the relationship between the government and members of the armed forces is " 'distinctively federal in character.' " 481 U.S. at 689, 107 S.Ct. 2063 (citing *Feres,* 340 U.S. at 143, 71 S.Ct. 153). Given that, the Court reasoned, "it 'makes no sense to permit the fortuity of the situs of the alleged negligence to affect the liability of [the] Government to the serviceman.' " *Id.* (citing *Stencel,* 431 U.S. at 672, 97 S.Ct. 2054). Second, the Court noted that the government provides service members with generous statutory disability and death benefits. *Feres* stated that the purpose of the FTCA was to provide a remedy to those who had been without, *see* 340 U.S. at 140, 71 S.Ct. 153, but service members injured during the course of activity incident to service quickly and efficiently receive benefits that compare favorably with those provided by most workers' compensation statutes. *See id.* at 689–90, 107 S.Ct. 2063. Finally, the Court noted that "suits brought by service members against the Government are the 'type[s] of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.' " *Id.* at 690, 107 S.Ct. 2063 (citing *Shearer,* 473 U.S. at 59, 105 S.Ct. 3039).

■ Against this background, we cannot conclude, at this stage of the litigation, that plaintiff's injury arose during an activity incident to military service. The Postal

Service contends that Fleming was on his way to Fort Knox when he was injured. Several cases from other jurisdictions have held that the activity of driving to one's duty station is an activity incident to military service. *See, e.g., Morey v. United States,* 903 F.2d 880, 881–82 (1st Cir.1990) (sailor's "act of returning to his ship was an activity incident to military service, despite fact that he was returning from nonmilitary activity."); *Shaw v. United States,* 854 F.2d 360, 363 (10th Cir.1988) (driving from off-base home to place of duty is incident to military service); *Richards v. United States,* 1 F.Supp.2d 498, 502 (D.Vi. 1998) ("[T]he activity of leaving the duty station after work and returning to the duty station for work is generally considered an activity incident to military service."); *Shoen v. United States,* 885 F.Supp. 827, 830 (E.D.N.C.1995) (reporting to military unit from off-base housing). Construing the evidence in this case in the light most favorable to Fleming, however, we find that he was not driving to the base when he was injured. Fleming testified at his deposition that he was "going to go get something to eat" when the postal truck struck his car. At this point in the case, we must assume that Fleming's assertion that he was heading to a sit-down breakfast is true. *See Dean,* 134 F.3d at 1272.

The Ninth Circuit faced a similar scenario in *Green v. Hall,* 8 F.3d 695 (9th Cir.1993). There, Val John Green, Michael Coffman, and another Army reservist, all of whom were attending a weekend drill session at the Portland Air Base, decided to forego the "perhaps unpalatable" food available on base and buy some donuts for themselves and others at an off-base restaurant. *Id.* at 699. Coffman drove. Fifteen minutes later "headed west, away from the base, two blocks shy

of Mary Jane's Coffee Shop"—the car in which the reservists were riding collided with a Salvation Army truck. *Id.* at 698. The crash injured Green and killed Coffman. When Green sued Coffman's estate, the estate alleged that the *Feres* doctrine precluded Green's suit.[1] The Ninth Circuit disagreed. It concluded that Green was not injured incident to service. His breakfast run was a "distinctly nonmilitary act, since it was not done under orders, was not intended to benefit the military, and did not occur on military property." *Id.* at 700. "Green was injured while off base and before he was due at morning formation. His injuries were therefore related to his military status only 'in the sense that all human events depend upon what has already transpired,' which is insufficient." *Id.* (citing *Brooks,* 337 U.S. at 52, 69 S.Ct. 918).

We reach the same result here. Fleming was injured on his own time, miles from the base, during an activity—driving to get something to eat at a Louisville-area restaurant—that had no relationship to his military service. Therefore, we cannot conclude that Fleming's injury was "even remotely related" to his status as a soldier. *Major,* 835 F.2d at 644. Furthermore, Fleming's allegation in this case—that a postal worker negligently ran a stop sign causing Fleming injury—in no way "calls into question the basic choices about the discipline, supervision, and control of a serviceman." *Shearer,* 473 U.S. at 58, 105 S.Ct. 3039. We see absolutely no danger that this case would "impermissibly insinuate the civilian judiciary into military decisions."[2] *Major,* 835 F.2d at 645. The *Feres* doctrine does not apply on the facts of this case, as currently developed.

1. The Ninth Circuit "has extended *Feres* to suits between individual members of the military, recognizing an intramilitary immunity from suits based on injuries sustained incident to service." *Green,* 8 F.3d at 699 (internal quotes omitted).

2. We have noted that Fleming was injured off base, but do not place undue reliance on this factor. In *Shearer,* the Supreme Court stated that the situs of the injury causing event "is not nearly as important as whether the suit requires the civilian court to second-guess military decisions." 473 U.S. at 57, 105 S.Ct. 3039.

The Postal Service, however, argues otherwise for two generally unpersuasive reasons. First, it asserts that the *Feres* doctrine operates to bar any suit by an active-duty service person against the federal government, without regard to the activity that the service person asserts led to his or her injury. This is simply not the law. Although we have stated, in dicta, that the Supreme Court "has now been 'persuaded' that the phrase 'any claim' contained in the FTCA does mean 'any claim but that of servicemen,'" *Major*, 835 F.2d at 645 n. 2, neither this court nor the Supreme Court so hold. Rather, we have stated that, under Supreme Court precedent, the *Feres* doctrine applies to bar claims relating to "all injuries suffered by military personnel that are *even remotely related* to the individual's status as a member of the military." *Id.* at 644 (emphasis added). Therefore, in analyzing a defendant's assertion of the *Feres* doctrine, a court must consider the nature of the injury-producing activity in the case. Next, the Postal Service asserts that the *Feres* doctrine should apply because, on the morning Fleming was injured, his "ultimate destination" was his duty station at Fort Knox. This theory is tantamount to the Postal Service's active-duty theory detailed above. Indeed, we are at a loss as to a limiting principle for this "ultimate destination" theory. In some sense, Fleming's ultimate destination was Fort Knox from the moment he awoke on the morning of September 22, 1994. We certainly could not conclude, however, that Fleming would be considered injured incident to service if, for example, a Postal Service truck barreled through the front door of Fleming's off-base home, flattening him as he began his journey to the bathroom. Accordingly, we reject the Postal Service's arguments.

### III.

Because at this stage in the litigation we cannot conclude that the activity that led to Fleming's injury was incident to military service, we **REVERSE** the district court's decision and **REMAND** for further proceedings consistent with this opinion.

Footnotes