Douglas SHAW, Plaintiff–Appellant,

v.

UNITED STATES of America and Thomas Boender, an individual, Defendants–Appellees.

No. 86–1727.

United States Court of Appeals, Tenth Circuit.

July 29, 1988.

Redmond Kemether, Oklahoma City, Okl., for plaintiff-appellant.

Richard K. Willard, Asst. Atty. Gen., and Joan M. Bernott, Sp. Litigation Counsel, Civil Div., Dept. of Justice, Washington, D.C., William S. Price, U.S. Atty., and Eleanor Darden Thompson, Asst. U.S. Atty., W.D. Okl., Oklahoma City, Okl., for defendants-appellees.

Before McKAY, SEYMOUR and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

## I.

Plaintiff, Douglas Shaw, an enlisted member of the United States Army, brought this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680 (1982), and its jurisdictional component, 28 U.S.C. § 1346(b) (1982), on a claim for damages arising out of the alleged negligent operation of a military vehicle by another member of the Army. Determining that the United States was immune from liability, the district court granted the United States' motion to dismiss for lack of subject matter jurisdiction. We affirm.

## II.

It is well settled that the United States may not be sued without its consent. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)); *accord United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *LaBash v. United States Department of the Army,* 668 F.2d 1153, 1154 (10th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982). However, the FTCA waives the United States' sovereign immunity in actions arising out of tortious conduct by governmental employees who are acting within the scope of their office or employment, under circumstances in which the United States, if a private person, would be liable to the plaintiff under the law of the place where the tortious act occurred. *See, e.g.,* 28 U.S.C. §§ 1346(b), 2674 (1982). The scope of this waiver is limited by exceptions contained in the FTCA itself and by judicial interpretation and application of the FTCA.

In *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the United States Supreme Court decided that the FTCA does not waive the United States' immunity from liability "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Accord United States v. Johnson,* —— U.S. ——, 107 S.Ct. 2063, 2066–67, 95 L.Ed.2d 648 (1987) (*Feres* doc-

trine bars "all suits on behalf of service members against the Government based upon service-related injuries"); *see also United States v. Stanley*, — U.S. —, 107 S.Ct. 3054, 3057, 95 L.Ed.2d 648 (1987); *Madsen v. United States ex rel. United States Army*, 841 F.2d 1011, 1012 (10th Cir.1987); *Martelon v. Temple*, 747 F.2d 1348, 1351 (10th Cir.1984), *cert. denied*, 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985); *LaBash*, 668 F.2d at 1154. This judicially created exception is informally known as the *Feres* doctrine. *Atkinson v. United States*, 825 F.2d 202, 204 (9th Cir. 1987), *cert. denied*, — U.S. —, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988).

In formulating the *Feres* doctrine, the Supreme Court noted that historically, "the relationship of military personnel to the Government has been governed exclusively by federal law." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159. The Court then opined: "We do not think that Congress, in drafting [the FTCA], created a new cause of action dependent on local law for service-connected injuries or death due to negligence." *Id.* The Court also found persuasive the fact that "most states have abolished the common-law action for damages between employer and employee and superseded it with workmen's compensation statutes which provide, in most instances, the sole basis of liability." *Id.* at 143, 71 S.Ct. at 158. According to the Court, recoveries under the military compensation system, i.e., payments by the Veterans Administration, "compare extremely favorably with those provided by most workmen's compensation statutes." *Id.* at 145, 71 S.Ct. at 159.

The Supreme Court later identified the three rationales underlying the *Feres* doctrine. *See Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977); *see also Johnson*, 107 S.Ct. at 2065 n. 2, 2068–69; *Chappell v. Wallace*, 462 U.S. 296, 299, 103 S.Ct. 2362, 2365, 76 L.Ed. 2d 586 (1983); *accord Madsen*, 841 F.2d at 1013; *Walls v. United States*, 832 F.2d 93,

95 (7th Cir.1987); *Atkinson*, 825 F.2d at 204; *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1490–92 (10th Cir.1983); *Carter v. City of Cheyenne*, 649 F.2d 827, 829–30 (10th Cir. 1981). The first rationale is the distinctively federal nature of the relationship between the government and members of its armed forces. The second is the availability of alternative military compensation systems. *See Feres*, 340 U.S. at 144–45, 71 S.Ct. at 158–59. And the third rationale, first explicated in *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), is the fear of damaging the military disciplinary structure.

In analyzing the *Feres* doctrine, this court has stated that the doctrine

is based in part on the perceived deleterious effects of service-related suits on military discipline and the express provision by Congress of another remedy through the Veterans' Benefits Act, which provides compensation for medical care and a limited income allowance to those injured while in the military, regardless of whether the government is at fault.

*LaBash*, 668 F.2d at 1154; *see also McKay v. United States*, 703 F.2d 464, 467 (10th Cir.1983) (to allow suit "would create an impossible situation wherein every person who received an injury in the military service, in combat or otherwise, would have the right to sue the government"). This court has also indicated that "[a] test for liability that depends on the extent to which particular suits would call into question military discipline and decision-making would itself require judicial inquiry into, and hence intrusion upon, military matters." *Madsen*, 841 F.2d at 1014 (quoting *Stanley*, 107 S.Ct. at 3063).

### III.

The issue presented in this case is whether the injuries sustained by Mr. Shaw [1] as a result of the collision arose out of or were in the course of activity incident to Mr.

---

1. We cannot locate in the record the plaintiff's military grade. We will therefore refer to the plaintiff as Mr. Shaw.

Shaw's military service. In resolving this issue, we consider whether or not the rationales that underlie *Feres* support the application of the *Feres* doctrine in the present case.

On the morning of August 24, 1984, Mr. Shaw and his wife were driving in their privately owned vehicle from their off-post residence to Mr. Shaw's place of duty on a military post, Fort Sill, Oklahoma. En route, a collision occurred between the Shaws' vehicle and a 2½-ton cargo truck owned by the United States Army and operated at the time by a serviceman, Private First-Class Thomas Boender. Both Mr. Shaw and his wife sustained personal injuries as a result of the accident.

At the time of the accident, Mr. Shaw was an active member of the United States Army. He had been relieved from duty at 4:00 p.m. the previous day and had obtained permission to leave the post to attend to his personal affairs. He was expected to report for duty at 7:30 a.m. the day of the accident. The accident occurred on the military post at approximately 7:10 a.m.

We believe that these facts, viewed together, demonstrate that at the time of the accident Mr. Shaw was involved in activity incident to his service, i.e., activity that is "related in some relevant way to his military duties." *Johnson v. United States*, 704 F.2d 1431, 1438 (9th Cir.1983). Clearly, the fact that Mr. Shaw was on the post and on his way to work was directly connected to Mr. Shaw's military service and the circumstances of the accident.[2] As the district court stated, "[Mr. Shaw] would not, except in the event of the rarest coincidence, have been in the same place at the same time with the same purpose, had it not been incident to his active status in the military." Record, vol. 1, doc. 12, at 5–6.

Mr. Shaw contends that *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), *rev'g* 169 F.2d 840 (4th Cir.1948), is factually similar to the present action. We disagree. In *Brooks* two servicemen on leave or furlough were riding along a public highway in their privately owned vehicle when they were struck by an Army truck. Unlike Mr. Shaw, the servicemen were on personal business which was not connected in any way and bore no relationship to their military service. They were not en route to a place of duty, and the accident occurred off-post. Based on these facts, the Supreme Court determined that the servicemen's injuries did not arise out of activity incident to military service. Indeed, "the two soldiers would have been injured had they never worn a uniform at all." *Brown*, 348 U.S. at 114, 75 S.Ct. at 144 (Black, J., dissenting); *accord Walls*, 832 F.2d at 96 (that servicemen in *Brooks* "were in the military was totally unrelated to the circumstances of the accident"). As discussed above, we believe that the facts in the present case dictate a different conclusion. Mr. Shaw's effort to analyze each fact separately is unavailing. Although each fact standing alone may not be dispositive and does not automatically bar the establishment of an FTCA claim, the totality of the facts and circumstances surrounding the accident and Mr. Shaw's injuries brings the *Feres* doctrine into play.

Mr. Shaw's reliance on *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), is also not helpful. Specifically, Mr. Shaw relies on *Shearer* to argue that the third *Feres* rationale—the fear of damaging the military disciplinary structure—controls the application of the *Feres* doctrine and does not provide a basis for barring the present action. In *Shearer* the Supreme Court placed emphasis on the third *Feres* rationale:

---

**2.** In a factually similar case, the Court of Appeals for the Fifth Circuit stated:

Since [plaintiff] was both on active duty status and on the premises of the Naval Air Station at the time of the accident, he was engaged in activity incident to service. That he had been relieved from his routine duties is not determinative. While on active duty

and on the base, [plaintiff] was still subject to all military regulations and discipline and was readily available for emergency service or temporary duties.

*Mason v. United States*, 568 F.2d 1135, 1136 (5th Cir.1978); *accord Walls*, 832 F.2d at 95; *Flowers v. United States*, 764 F.2d 759, 761 (11th Cir. 1985).

*Feres* seems best explained by the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given for negligent acts committed in the course of military duty."

*Id.* at 57, 105 S.Ct. at 3042 (quoting *United States v. Muniz*, 374 U.S. 150, 162, 83 S.Ct. 1850, 1857, 10 L.Ed.2d 805 (1963)).[3] However, the Court prefaced its reliance on that rationale with the statement that the *Feres* decision was based on "several grounds." *Id.* The Court stated, too, that "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the [FTCA] as it has been construed in *Feres* and subsequent cases." *Id.*

No doubt the Supreme Court in *Shearer* focused and relied on the third *Feres* rationale because *Shearer* was a clear case striking at the core of the concerns intimated in that rationale.[4] The Court, however, did not limit the application of the *Feres* doctrine only to cases supported by that rationale. In fact, the Court subsequently made it clear that all three *Feres* rationales support application of the doctrine. *See Johnson*, 107 S.Ct. at 2065 n. 2, 2068–69;[5] *accord Atkinson*, 825 F.2d at 205–06.[6] In-

deed, review of recent Supreme Court precedents—*Chappell*, 462 U.S. 296, 103 S.Ct. 2362, *Shearer*, 473 U.S. 52, 105 S.Ct. 3039, *Johnson*, —— U.S. ——, 107 S.Ct. 2063, and *Stanley*, —— U.S. ——, 107 S.Ct. 3054—"makes it clear that in recent years the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military...." *Major v. United States*, 835 F.2d 641, 644 (6th Cir. 1987).

With regard to the first *Feres* rationale, at the time of the accident Mr. Shaw was an active member of the armed forces and thus had a distinctively federal relationship to the government and the serviceman allegedly responsible for Mr. Shaw's injuries. Indeed, as noted above, the accident occurred on the post on Mr. Shaw's way to work. With regard to the second rationale, Mr. Shaw received medical treatment and rehabilitation at military facilities as a result of the accident and has an administrative remedy in that upon leaving the Army he is eligible for disability benefits under the military compensation system. The availability of generous statutory disability benefits "is an independent reason why the *Feres* doctrine bars suit for service-related injuries." *Johnson*, 107 S.Ct. at 2068. Fi-

---

3. The Supreme Court also stated that what is important is whether the FTCA suit "requires the civilian court to second-guess military decisions and whether the suit might impair essential military discipline." *Shearer*, 473 U.S. at 57, 105 S.Ct. at 3042 (citation omitted).

4. In *Shearer*, the plaintiff alleged that certain "superiors in the Army 'negligently and carelessly failed to exert a reasonably sufficient control over [a serviceman previously convicted of manslaughter], ... failed to warn other persons that he was at large, [and] negligently and carelessly failed to ... remove [the serviceman] from active military duty.'" *Id.* at 58, 105 S.Ct. at 3043 (citation omitted). Plaintiff's allegation went "directly to the 'management' of the military" and "call[ed] into question basic choices about the discipline, supervision, and control of a serviceman." *Id.*

5. As the Court of Appeals for the Ninth Circuit declared, "*Johnson* appears to breathe new life into the first two *Feres* rationales, which until that time had been largely discredited and aban-

doned." *Atkinson*, 825 F.2d at 205–06. The seeming abandonment of the first two *Feres* rationales is noted in *Shearer*: "Although no longer controlling, other factors mentioned in *Feres* are present here." *Shearer*, 473 U.S. at 58 n. 4, 105 S.Ct. at 3043 n. 4.

6. In *Madsen*, 841 F.2d at 1013 (citation omitted), we held that the *Feres* doctrine barred the plaintiff's claim notwithstanding that the plaintiff argued that the negligent "medical treatment was not incident to service since '[n]either decision of command nor professional military judgment [was] involved in the application or non-application of proper medical care ...' at the Army medical center." This court further stated that "once it is determined that a service-member such as Mr. Madsen was on active duty during the time military medical treatment was rendered, the treatment is necessarily incident to service and judicial inquiry ends." *Id.* at 1014.

nally, contrary to Mr. Shaw's contention, the third rationale may also support the application of the *Feres* doctrine in this case. Maintenance of this suit, which arose from alleged negligent acts committed in the course of military duty, could have a detrimental effect on military discipline and decisions. And this case may require military personnel, including Mr. Shaw, Private First–Class Thomas Boender and possibly his superiors, military eye-witnesses to the accident, and military medical personnel who treated Mr. Shaw and diagnosed the extent of his injuries, "to testify in court as to each other's decisions and actions." *Shearer*, 473 U.S. at 58, 105 S.Ct. at 3043 (quoting *Stencel Aero Engineering*, 431 U.S. at 673, 97 S.Ct. at 2059). Although the present case may not involve a "decision of command," we believe that this case would insert the judiciary into "military affairs at the expense of military discipline and effectiveness." *Id.* at 59, 105 S.Ct. at 3043.

We conclude that Mr. Shaw's injuries arose out of or were sustained in the course of activity incident to Mr. Shaw's military service and that the considerations underlying the *Feres* doctrine militate against the maintenance of this suit. Mr. Shaw's claim under the FTCA is thus barred by the *Feres* doctrine. The district court's ruling is affirmed.