Marvin G. and Dora
WHITHAM, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 88–1490–T.

United States District Court,
D. Kansas.

May 17, 1991.

---

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motion of defendant for summary judgment (Doc. 10). The action is brought by the heirs of Steven H. Whitham, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), for the alleged negligent release of Steven from the psychiatric unit of the Veterans Administration Medical Center ("VAMC") in Wichita, Kansas.

## I. *Background*

Steven Whitham grew up in Wichita and attended school through the eleventh grade. At age 19, he entered the United States Army for the first time and served until 1981, when he was honorably discharged. Whitham returned to Wichita after his discharge and soon thereafter began showing signs of mental illness. Between December 1983 and October 1985, Whitham was treated for mental illness in a number of institutions.

On or about April 19, 1986, Whitham re-entered the Army. After ten days, however, he became confused and disoriented, and on May 21, 1986 he was transferred to the Army Medical Center in Fort Gordon, Georgia. He was diagnosed with a schizophrenia disorder and remained at the medical center in Fort Gordon for several months, receiving treatment and medication. On September 25, 1986, the Army Physical Evaluation Board found Whitham to be 50% disabled due to his mental condition. The Board determined that Whitham was unfit for further military service and recommended that he be placed on the Temporary Disability Retired List, to be re-examined in September 1987.

Whitham returned to Wichita after his release from Fort Gordon. He was first seen at the VAMC in Wichita on October 6, 1986, at which time he was given medication for one month and told to return on October 7, 1986. Dr. Drummond of the Veterans Administration Mental Hygiene Clinic saw Whitham on October 7 and 15, and Whitham was to return on November 12, 1986. His mother called to cancel his November 12 appointment, informing the Clinic that Whitham refused to come and had "got rid" of all his medications.

On November 15, 1986, Whitham was admitted to St. Joseph Medical Center, where he was diagnosed as a residual paranoid schizophrenic. He was discharged from St. Joseph on November 20 with instructions to follow-up with weekly visits to the VA Clinic.

Whitham was admitted to the VAMC on November 26, 1986, complaining of auditory hallucinations. During his stay at the VAMC, Whitham was involved in several altercations with other patients, and he was warned that such conduct might lead to transfer or legal charges. On December 3, 1986, following a final "near physical alter-

cation," Whitham was discharged from the VAMC. The discharge papers and notes reveal that the physiatric staff had ruled out schizophrenia and psychoses as diagnoses, and further noted that Whitham had no suicidal ideas. Defendants' Ehts. 24, 25.

On December 5, 1986, Whitham purchased a Smith and Wesson Model 587 gun in a Wichita store. Immediately after purchasing the gun, Whitham shot himself to death in the store parking lot. At the time of his death, no order had been entered placing Whitham on temporary disability, and he remained on active duty.

## II. *Discussion*

Defendants move for summary judgment under the *Feres* doctrine exception to the FTCA waiver of sovereign immunity.* In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Court held that the federal government "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. "[T]he *Feres* doctrine has been applied consistently to bar all suits on behalf of service members against the Government based upon service-related injuries." *United States v. Johnson*, 481 U.S. 681, 687–88, 107 S.Ct. 2063, 2067, 95 L.Ed.2d 648 (1987). The Court has articulated three rationale supporting this exception. "First, the relationship between the Government and members of its Armed Forces is ' "distinctively federal in character,...." ' " *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977) (quoting *Feres*, 340 U.S. at 143, 71 S.Ct. at 158). Second, the Veterans' Benefits Act provides injured servicemen with an adequate statutory substitute for the tortious acts attributable to the government. *Id.* Finally, governmental tort liability is considered inimicable to the needs of military discipline. *Id.* It is not necessary, however, that all three rationale be present in

support of a given instance of a service-related injury, and the *Feres* doctrine receives broad application. *Shaw v. United States*, 854 F.2d 360, 364 (10th Cir.1988).

The Tenth Circuit has repeatedly emphasized the importance of the status of the servicemember in determining the applicability of the doctrine. *See Carter v. City of Cheyenne*, 649 F.2d 827, 830 (10th Cir. 1981) (status of the deceased or injured person controls); *Harten v. Coons*, 502 F.2d 1363, 1365 (10th Cir.1974) (whether a service member's injury is "incident to service" depends upon claimant's status at time of injury), *cert. denied*, 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975). In *Shaw*, the court reviewed the recent Supreme Court pronouncements and concluded that the *Feres* doctrine " 'encompass[es], at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military....' " 854 F.2d at 364 (emphases in original) (quoting *Major v. United States*, 835 F.2d 641, 644 (6th Cir.1987)).

This circuit has also addressed the applicability of the doctrine to claims of tortious medical treatment. In *Harten*, the court held that a service member on active duty at the time he underwent an elective vasectomy could not recover against the government for the alleged negligent performance of the operation. The court found it irrelevant that the surgery was elective, "because the serviceman is taking advantage of medical privileges granted only to military personnel." 502 F.2d at 1365. *See also United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (doctrine barred claim of "negligent and careless failure to exert control" over dangerous servicemember).

■ More recently, the Tenth Circuit has made clear that the judicial inquiry is at an end once the court determines that a servicemember was on active duty at the time he received medical treatment in military

---

* Because the applicability of the *Feres* doctrine relates to this court's subject matter jurisdiction under 28 U.S.C. § 1346(b), the court considers the motion as one for dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). *See* C. Wright, A. Miller, & M. Kane *Federal Practice and Procedure* § 2713 (2d ed. 1983).

medical facility. In *Madsen v. United States ex rel. U.S. Army, Corps of Engineers*, 841 F.2d 1011 (10th Cir.1987), the court found the *Feres* doctrine applicable to the medical malpractice claim of serviceman on "terminal leave." Plaintiff was officially on active duty at the time of the medical treatment, but argued that "terminal leave" is status tantamount to a military leave or discharge, and that his medical inability to perform actual military duties effectively rendered his status as one of "inactive duty." The court rejected this argument, finding that one's military status is purely a formalistic matter, and that the legal relationship created by the active duty status is not set aside simply because the claimant is unable to perform actual military duties. *Id.* at 1013. Thus, in determining whether an injury received from a military medical facility was "incident to military service," the only inquiry is whether the plaintiff was on active duty at the time of the injury.

 Plaintiffs do not dispute that Whitham was on active duty at the time he was treated and released from the VAMC. Rather, they contend that *Madsen* is inapplicable to injuries received at a Veterans Administration hospital, as opposed to a "military hospital." Plaintiffs offer no rationale for recognizing this as a legally significant distinction, nor does the court find any basis to do so. In *Madsen* the court noted:

> While some courts have questioned whether FTCA claims based on a servicemember's non-field military medical treatment could interfere with military discipline, "[a] test for liability that depends on the extent to which particular suits would call into question military discipline and decision-making would itself require judicial inquiry into, and hence intrusion upon, military matters."

841 F.2d at 1014 (citations omitted). No less than medical facilities located on a military base, the treatment received by servicemembers on active duty at a V.A. hospital implicates numerous decisions made by military personnel. *See Jones v.*

*La Riviera Club, Inc.*, 655 F.2d 1032, 1036 (D.P.R.1987).

The court concludes that plaintiffs' claim is barred under the *Feres* doctrine exception to the FTCA. It is therefore unnecessary to address defendants' alternative arguments.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion to dismiss (Doc. 10) be granted.