Shawn L. SHOEN, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 7:94–CV–110–D3.

United States District Court,
E.D. North Carolina,
Southern Division.

March 23, 1995.

John D. Warlick, Jr., Ellis, Hooper, War-
lick, Morgan & Henry, Jacksonville, NC, for
plaintiff.

Charles E. Hamilton, III, Asst. U.S. Atty.,
Raleigh, NC, for defendants.

## MEMORANDUM OF DECISION

DUPREE, District Judge.

Plaintiff, Shawn L. Shoen, a former Lance
Corporal with the United States Marine
Corps (Corps) at Camp Lejeune, originally
filed this action on November 1, 1993 in the
Superior Court of Onslow County, North
Carolina for injuries he sustained resulting
from a motorcycle accident. Former Lance
Corporals Steven Reddish and Bruce Pheas-

ant were the driver and owner respectively of a vehicle involved in the collision. On October 20, 1994, the Attorney General, acting through the United States Attorney for the Eastern District of North Carolina, certified that Reddish and Pheasant were acting in the scope of their employment with the Corps at all relevant times. Consequently, the United States was substituted as the sole defendant pursuant to 28 U.S.C. § 2679(b)(1) and the action was removed to this court based on the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671–2680. The action is presently before the court on defendant's motion to dismiss under F.R.Civ.P. 12(b)(6) as being barred by the *Feres* doctrine.

Taken in the light most favorable to the plaintiff, the undisputed facts are as follows: On October 16, 1991, plaintiff, while traveling from his off-base housing to his unit located on the Camp Lejeune base, was struck by a vehicle driven by Reddish, a Marine stationed at Camp Lejeune. The collision occurred when the vehicle driven by Reddish suddenly crossed the center line of Sneads Ferry Road in Camp Lejeune and hit the 1990 Suzuki motorcycle driven by plaintiff which, at the time, was on the shoulder of the road. Plaintiff concedes that the "collision occurred on the base when [he] was approximately eight to ten miles away from his unit and approximately forty-five minutes before he was scheduled to report for duty." (Plaintiff's Memorandum at p. 2.) Plaintiff further concedes that Corporal Reddish was also on active duty with the Corps and was returning to his barracks to retrieve a weapon sling and a shooter's book at the time of the accident. Reddish had been given permission from his sergeant to retrieve these items.

The impact of the collision caused plaintiff to suffer severe permanent injuries which ultimately led to his discharge from the Corps. As a result, plaintiff initiated the present suit alleging negligence and infliction of severe emotional distress. The sole issue before the court is whether these claims based on the FTCA are barred by the *Feres* doctrine.

■ Although styled as a motion to dismiss under F.R.Civ.P. 12(b)(6), the defendant, in actuality, seeks dismissal of the action against them for want of subject matter jurisdiction. Because the applicability of the *Feres* doctrine directly relates to this court's subject matter jurisdiction under 28 U.S.C. § 1346(b), the better view is to treat the motion as one for dismissal under F.R.Civ.P. 12(b)(1). *See Whitham v. United States,* 765 F.Supp. 674, 676 (D.Kan.1991) (citing 10 C. Wright, A. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2713 (2d Ed.1983)). The court is under an obligation to dismiss the action if it appears that the court lacks subject matter jurisdiction. F.R.Civ.P. 12(h)(3). In any event, the court is convinced that the *Feres* doctrine applies here under either standard and, for the reasons to follow, will grant defendant's motion to dismiss.

With the promulgation of the expansive FTCA, the sovereign immunity once afforded the United States against actions for its wrongful conduct was abrogated. However, in 1950 the Supreme Court carved out an exception to claims against the United States based on "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). In that case, which was decided along with two companion cases, the Court stated that "[t]he common fact underlying the three cases is that each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces." *Id.* See also *Hass v. United States,* 518 F.2d 1138, 1140 (4th Cir. 1975) (holding that the "correct test is the relatively mechanical one derived from the *Feres* language"). This doctrine, which is now commonly known as the *Feres* doctrine, provides that service members are barred from recovering damages for injuries sustained "incident to service." *United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985). Moreover, the "incident to service" rule enunciated in *Feres* has broad application. *Oram v. Alsip,* 39 F.3d 1192, 1994 WL 596853, *2 (10th Cir. 1994) (unpublished) (citing *United States v. Johnson,* 481 U.S. 681, 688–91, 107 S.Ct.

2063, 2067–69, 95 L.Ed.2d 648 (1987)); *Wright v. Park,* 5 F.3d 586, 590 (1st Cir.1993) (discussing wide scope of the rule); *Appelhans v. United States,* 877 F.2d 309, 310 (4th Cir.1989) (Supreme Court has sharply limited the ability of a serviceman to recover for injuries under the FTCA).

The Supreme Court has emphasized three rationales in establishing this doctrine: first, the distinctive federal nature of the relationship between the government and members of the armed forces; second, the availability of existing alternative compensation schemes for retirement and disability of service members; and third, the fear that allowing suits by service members against the United States may have a negative impact on the military discipline system. *Feres,* 340 U.S. at 144–45, 71 S.Ct. at 158–59. While the vitality of the first and second rationale have been questioned in the past, more recently the Supreme Court in *Johnson,* 481 U.S. 681, 107 S.Ct. 2063 (1987), reaffirmed the importance of all three. "It is not necessary, however, that all three rationale be present in support of a given instance of a service-related injury." *Whitham,* 765 F.Supp. at 676.

■ In determining whether certain injuries arise from activities incident to service, courts generally look to the three rationales stated above. In addition, a popular test has been developed for determining whether the activity of a serviceman is incident to military service. *See Parker v. United States,* 611 F.2d 1007, 1013 (5th Cir.1980), *rehearing denied,* 615 F.2d 919 (5th Cir.1980). The factors to be considered are: (1) the duty status of the service member; (2) the situs of the injury [especially with vehicular collisions]; and (3) the activity the service member was engaged in at the time of the injury. *Id.* Upon examining the totality of the circumstances and evaluating the relative weight of the factors combined, the court determines whether the activity was, in fact, incident to service. *Id.*

### *"Incident to Service" Factors*

#### 1. *Duty Status*

■ In addressing this first factor, courts have generally distinguished a serviceman's status between being on furlough or leave as compared to being released from one's duties for the day. *Warner v. United States,* 720 F.2d 837, 839 (5th Cir.1983). Typically, a service member injured while on furlough or leave has an action under the FTCA. *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949) (serviceman injured in vehicle collision while on furlough and off base was allowed to recover for injuries sustained). In contrast, however, one who is only off duty for the day is generally held to be acting incident to service. *See Shaw v. United States,* 854 F.2d 360, 363 (10th Cir.1988) (motor vehicle accident while returning to duty); *Mason v. United States,* 568 F.2d 1135 (5th Cir.1978) (motorcycle accident while returning home); *Watkins v. United States,* 462 F.Supp. 980 (S.D.Ga.1977) (motorcycle accident while leaving a recreational event on base), *aff'd per curiam,* 587 F.2d 279 (5th Cir.1979).

In the present case, plaintiff concedes that he was an active duty member of the Corps at the time of his injury. His normal workday was from 6:30 a.m. until 4:30 p.m. Although plaintiff argues that he was in a "liberty status" at the time of the accident, his military status prior to the accident more closely resembles one being released from duties for the day and not on furlough or leave. "The fact that [plaintiff] had been relieved of duty for the rest of the day does not mean that he was in off-duty status as were the servicemen in *Brooks* (furlough) or *Parker* (four-day leave)." *Warner,* 720 F.2d at 838. *Cf. Downes v. United States,* 249 F.Supp. 626 (E.D.N.C.1965) (serviceman's injuries resulting from automobile collision were not incident to service where he had received pass and was proceeding to his off-base residence for personal matters).

#### 2. *Situs of Injury*

It is undisputed that the accident in question occurred on the Camp Lejeune military base approximately eight to ten miles from plaintiff's unit. (Plaintiff's Opposition Brief p. 2.) While the situs of the injury may not be determinative, when an injury occurs on a military base "it is more likely that it was the

result of activity incident to military service." *Parker*, 611 F.2d at 1014.

### 3. *Activity of Serviceman*

It is also undisputed that at the time of plaintiff's injury, he was reporting to his military unit. Plaintiff cannot seriously contest the fact that he was under the compulsion of military orders in reporting to an assigned duty station with his Second Assault Amphibious Battalion at a scheduled time. More importantly, his failure to report to this unit in a timely manner would certainly subject him to military discipline. "[T]he fact that [plaintiff] was on the [base] and on his way to work was directly connected to [plaintiff's] military service and the circumstances of the accident." *Shaw*, 854 F.2d at 363. *See also Mason*, 568 F.2d at 1136 ("While on active duty and on the base, [plaintiff] was still subject to all military regulations and discipline and was readily available for emergency service or temporary duties"). As such, the court finds that plaintiff was on active duty and acting pursuant to military directives when the accident occurred.

### *Feres Rationales*

Lastly, the court considers the three rationales articulated in *Feres* in determining whether plaintiff's claims are barred. With respect to the first rationale, the court has already concluded that at the time of the accident, plaintiff was on active duty while reporting to his duty station as scheduled when another vehicle driven by a fellow serviceman collided with his motorcycle on the Camp Lejeune base. Hence, a distinctive federal relationship between the plaintiff, the government and other members of the armed forces was implicated.

As to the second rationale, there is evidence that plaintiff is currently drawing disability benefits under the military's compensation system (i.e., VA benefits). As a result of his injuries, "the plaintiff has received and in the future will continue to receive medical and hospital care and treatment furnished by the United States of America." (Complaint ¶ 13.) It follows that plaintiff has already benefited and will continue to benefit from the statutory compensation scheme under the military's Veterans Act. To allow the present suit to continue would in effect undermine this compensation plan. *See Kendrick v. United States*, 877 F.2d 1201, 1204 (4th Cir.1989), *cert. dismissed*, 493 U.S. 1065, 110 S.Ct. 1104, 107 L.Ed.2d 1013 (1990). While this evidence alone may not constitute a bar, the availability of disability benefits can be an independent reason for applying the *Feres* doctrine for service-related injuries. *Shaw*, 854 F.2d at 364 (citing *Johnson*, 481 U.S. at 689, 107 S.Ct. at 2068).

Contrary to plaintiff's contention, the third rationale might also support application of the *Feres* doctrine in the case sub judice. Maintenance of this suit against the United States as it now stands could negatively affect military discipline and decisions. This is a logical assumption since the accident occurred on a military base, between military personnel and due to the alleged negligence of a serviceman acting within the course and scope of his employment with the Corps and with the express permission of a superior officer.

There is little doubt that military personnel who treated plaintiff both at the scene and who treated and diagnosed him at the Camp Lejeune Naval Hospital would be required to testify. In addition, other military personnel on the base that might have witnessed the collision would certainly lend credence to plaintiff's claims. Similarly, former Lance Corporals Reddish and Pheasant would need to recount the events leading up to the collision. Finally, the sergeant who granted Reddish permission to drive back to his barracks to retrieve the gun sling and shooter's book might be called upon to explain his decision and to possibly articulate how Reddish was acting in the scope of his military employment.

Conceivably, these individuals might be required "to testify in court as to each other's decisions and actions." *Shaw*, 854 F.2d at 365 (citing *Shearer*, 473 U.S. at 58, 105 S.Ct. at 3043). Although the present case might not directly involve a "decision of command," the court is of opinion that this case could presumably inject the judiciary into "military

affairs at the expense of military discipline and effectiveness." *Id.*

As noted, the court finds guidance in applying the *Feres* doctrine to the case at bar in the Tenth Circuit's decision in *Shaw.* Under strikingly similar facts, the court in *Shaw* rejected identical arguments as maintained by the plaintiff here. In that case, Mr. Shaw and his wife were driving their personal automobile from their off-base housing to Mr. Shaw's duty station on a military post. En route, a collision occurred between the Shaw's vehicle and an Army cargo truck driven by a fellow serviceman. At the time of the accident, Mr. Shaw was an active member of the U.S. Army and had been relieved from duty at 4:00 p.m. the previous day and was attending to personal business while off duty. The accident occurred on the military base approximately twenty minutes before he was expected to report to duty. Cumulatively, these facts as articulated by the Shaw court,

> demonstrate that at the time of the accident Mr. Shaw was involved in activity incident to his service, i.e., activity that is "related in some relevant way to his military duties." Clearly, the fact that Mr. Shaw was on the post and on his way to work was directly connected to Mr. Shaw's military service and the circumstances of the accident. As the district court stated, "[Mr. Shaw] would not, except in the event of the rarest coincidence, have been in the same place at the same time with the same purpose, had it not been incident to his active status in the military."

*Id.* at 363 (citations omitted).

Similarly, the court in *Shaw* rejected two principal arguments raised by plaintiff in the case at bar. In particular, the *Shaw* court held that *Brooks* was not controlling and was distinguishable. Unlike Mr. Shaw and the plaintiff in the present case,

> the servicemen [in *Brooks* ] were on personal business which was not connected in any way and bore no relationship to their military service. They were not en route to a place of duty, and the accident occurred off-post. Based on these facts, the Supreme Court determined that the ser-

vicemen's injuries did not arise out of activity incident to military service.

*Id.* Thus, plaintiff's assertion that the present case should be guided by *Brooks* and not *Feres* is without merit.

Likewise, the *Shaw* court rejected plaintiff's reliance on *United States v. Shearer* and his contention that the third *Feres* rationale concerning the fear of damaging military discipline controls and does not provide a basis for barring this action. *Id.* Mindful that the Supreme Court in *Shearer* placed emphasis on the third rationale, the *Shaw* court reasoned that the Supreme Court had prefaced its reliance on the third rationale by stating that the *Feres* decision was based on "several grounds." *Id.* at 364 (quoting *Shearer,* 473 U.S. at 57, 105 S.Ct. at 3042). "The *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the [FTCA] as it has been construed in *Feres* and subsequent cases." *Id.* In further rejection of this argument, the court in *Shaw* opined that

> No doubt the Supreme Court in *Shearer* focused and relied on the third *Feres* rationale because *Shearer* was a clear case striking at the core of the concerns intimated in that rationale. The Court, however, did not limit the application of the *Feres* doctrine only to cases supported by that rationale. In fact, the Court subsequently made it clear that all three *Feres* rationales support application of the doctrine. Indeed, review of recent Supreme Court precedents—"makes it clear that in recent years the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military...."

*Id.* (citations omitted).

As such, plaintiff's arguments in the present case that *Brooks* is more analogous than *Feres* and that the third rationale is dispositive of the doctrine's applicability is not persuasive. *But see Milleville v. United States,* 751 F.Supp. 976 (M.D.Fla.1990) (finding that serviceman's injury was "incident to service"

but refusing to apply *Feres* doctrine because the third rationale was not implicated).

In sum, the court finds plaintiff's injury to have occurred during activity incident to his military service. While each of the facts, standing alone, does not compel a conclusion that plaintiff's FTCA action is barred, considered as a whole, the circumstances compel application of the *Feres* doctrine. Accordingly, the United States' motion to dismiss will be granted.

Judgment in accordance with the foregoing decision will be entered.