**Wofton J. STEWART, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 95–2096.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1996.

Decided July 26, 1996.

---

ARGUED: David Bouldin Craig, Craig & Brisson, P.A., Fayetteville, North Carolina, for Appellant. Bruce Charles Johnson, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Charles E. Hamilton, III, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Before WILKINSON, Chief Judge, ERVIN, Circuit Judge, and CHAPMAN, Senior Circuit Judge.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge ERVIN and Senior Judge CHAPMAN joined.

## OPINION

WILKINSON, Chief Judge:

 This case questions once again the validity of the *Feres* doctrine, which prohibits recovery against the government for injuries suffered incident to military service. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Appellant Wofton J. Stewart, when a Staff Sergeant in the United States Army, was involved in an automobile accident with Sergeant Raymond Marciano on the grounds of Fort Bragg, North Carolina. The district court rejected appellant's suit against the government on the basis that it was barred by *Feres.* On appeal, Stewart contends that the district court misapplied the *Feres* doctrine.

 In our view, however, this case falls squarely within the *Feres* bar. The accident occurred on a military base, appellant was on active duty at the time, and his injuries were related to his performance of military duties. Moreover, the rationales underlying the *Feres* doctrine support its application here. Accordingly, we affirm the judgment of the district court.

## I.

The facts in this case are not in dispute. The accident took place on the morning of April 15, 1987. At the time, appellant Stewart was driving to his on-base residence in Fort Bragg after having just completed a mandatory physical training exercise. He was returning to his quarters to shower and change clothes before reporting to his next duty assignment. Sergeant Marciano, meanwhile, was driving to Fort Bragg's machine gun range for mandatory training. Both men were on active duty status. Their cars collided on a road within the base, and Stewart was injured.

After lengthy proceedings not relevant here, on May 2, 1994, Stewart filed this action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.,* seeking to recover for his injuries. The district court rejected the claim on summary judgment, finding it to be barred by the *Feres* doctrine. Stewart now appeals.

## II.

According to Stewart, the district court erred in concluding that the *Feres* doctrine applies here. We disagree. A review of the circumstances surrounding Stewart's injuries, and of the rationales underlying the doctrine, reveals that this case lies at the heart of the *Feres* bar.

### A.

 The Supreme Court held in *Feres* that "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159. The "Court has never deviated from this characterization of the *Feres* bar." *United States v. Johnson,* 481 U.S. 681, 686, 107 S.Ct. 2063, 2066, 95 L.Ed.2d 648 (1987). Our task, then, is to assess whether appellant's injuries *arose out of activity incident to service.* In making this determination, we are mindful that, "[s]ince its inception, the *Feres* doctrine has been broadly and persuasively applied by federal courts.... Indeed, the Supreme Court has consistently reaffirmed the *Feres* doctrine," *Kendrick v. United States,* 877 F.2d 1201, 1202–03 (4th Cir.1989), *cert. dismissed,* 493 U.S. 1065, 110 S.Ct. 1104, 107 L.Ed.2d 1013 (1990), and "has sharply limited the ability of members of the uniformed services to recover damages under the FTCA," *Appelhans v. United States,* 877 F.2d 309, 311 (4th Cir.1989).

 The circumstances of this case make clear that appellant's injuries arose from activity incident to service. First, Stewart was on active duty status at the time of the accident; he was not on furlough, and he was not subject to any pass or leave temporarily excusing him from his duties. *See Feres,* 340 U.S. at 138, 146, 71 S.Ct. at 155, 159. In addition, the collision occurred on the grounds of a military base. Both of these

considerations militate in favor of a conclusion that *Feres* applies. *See, e.g., Hass v. United States,* 518 F.2d 1138, 1142 (4th Cir. 1975); *see also Parker v. United States,* 611 F.2d 1007, 1013–14, *reh'g denied,* 615 F.2d 919 (5th Cir.1980). "While on active duty and on the base, [the plaintiff] was still subject to all military regulations and discipline and was readily available for emergency service or temporary duties." *Mason v. United States,* 568 F.2d 1135, 1136 (5th Cir.1978).

Moreover, Stewart was engaged in activity directly related to the performance of military obligations when he was injured—he was leaving one duty station to return to his residence in preparation for his next assignment. In such circumstances, courts have routinely found any lawsuit to be barred by *Feres. See Shaw v. United States,* 854 F.2d 360 (10th Cir.1988) (automobile accident on base while service member driving to report for duty for the day); *Flowers v. United States,* 764 F.2d 759 (11th Cir.1985) (automobile accident on base while service member driving home); *Warner v. United States,* 720 F.2d 837 (5th Cir.1983) (motorcycle accident on base while service member driving to store); *Mason,* 568 F.2d at 1135 (motorcycle accident on base while service member driving home). Indeed, in several of these cases the plaintiff was off-duty for the day or was tending to personal business when the accident occurred. *E.g., Flowers,* 764 F.2d at 759; *Warner,* 720 F.2d at 837. Here, Stewart had not been released for the day and was not on personal business, thus placing this case at the core of the *Feres* bar.

In short, we have no difficulty concluding that Stewart's injuries arose from activity incident to service. "Clearly, the fact that [the plaintiff] was on the post and on his way to work was directly connected to [his] military service and the circumstances of the accident." *Shaw,* 854 F.2d at 363. Even if we had any doubts on this score, they would be dispelled by our recognition that, "in recent years the [Supreme] Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military." *Major v. United States,* 835 F.2d 641, 644 (6th Cir.1987), *cert. denied,* 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988) (emphasis in original).

### B.

In the face of all this, Stewart asserts that *Feres* has no application here. According to Stewart, the primary consideration underlying *Feres* is preventing courts from second-guessing military orders and thereby interfering with military discipline. Here, Stewart observes, he was not acting under the direct orders of a superior officer when his injuries occurred. As a result, he concludes, his suit does not implicate the interest in preserving military discipline and thus should not be barred by the *Feres* doctrine.

■ There are several problems with this reasoning. First, although the Supreme Court has sometimes focused on the interest in protecting military discipline when discussing *Feres, see United States v. Shearer,* 473 U.S. 52, 57–58, 105 S.Ct. 3039, 3042–43, 87 L.Ed.2d 38 (1985), the Court has subsequently made clear that this is not the only (or even the most critical) interest supporting the *Feres* doctrine. *Johnson,* 481 U.S. at 688–91, 107 S.Ct. at 2067–69. Instead, the "Court has emphasized three broad rationales underlying the *Feres* decision," *Johnson,* 481 U.S. at 688, 107 S.Ct. at 2068, of which the concern with military discipline is only one. *See Appelhans,* 877 F.2d at 311.

The other two rationales support the application of *Feres* here. The first stems from the special federal character of the relationship between the government and its military personnel. In such a context, there is a significant interest in basing recovery on the uniform federal standards that govern compensation to injured service members rather than on a hodgepodge of divergent state laws depending on where the injury arose. *Johnson,* 481 U.S. at 689, 107 S.Ct. at 2068; *see Feres,* 340 U.S. at 142–44, 71 S.Ct. at 157–58. Since Stewart was on active duty status and was engaging in activity related to his military obligations when he was injured, he possessed the distinctive relationship with the government that underlies this aspect of *Feres. See Shaw,* 854 F.2d at 364.

The second rationale of *Feres* is that, in light of the comprehensive system of benefits designed to compensate injured service personnel, Congress likely did not envision that service members would recover under the FTCA as well. *Johnson*, 481 U.S. at 689–90, 107 S.Ct. at 2068–69; *see Feres*, 340 U.S. at 144–45, 71 S.Ct. at 158–59. This interest, too, is implicated in this case—Stewart received medical treatment for his injuries at military facilities, and he may be entitled to disability benefits on retirement from active duty (evidently, he is seeking disability benefits and the issue has not been resolved). *See Shaw*, 854 F.2d at 364.

■ Moreover, the final rationale—preserving military discipline—is not nearly as narrow as Stewart suggests; when properly characterized, it applies here as well. Contrary to Stewart's interpretation, this interest does not arise only when the lawsuit calls into question the orders of a superior officer. *See United States v. Stanley*, 483 U.S. 669, 680–81, 107 S.Ct. 3054, 3062, 97 L.Ed.2d 550 (1987) ("*Feres* did not consider the officer-subordinate relationship crucial"). The Supreme Court, in fact, has applied the *Feres* doctrine when service members plainly were not acting under direction of command. *See Shearer*, 473 U.S. at 52, 105 S.Ct. at 3040. This is because "military discipline involves not only obedience to orders, but more generally duty and loyalty to one's service and to one's country. Suits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word." *Johnson*, 481 U.S. at 691, 107 S.Ct. at 2069; *see also Stanley*, 483 U.S. at 682–83, 107 S.Ct. at 3064; *Kendrick*, 877 F.2d at 1205.

■ Thus, the relevant inquiry is not whether the particular lawsuit involves a challenge to a military order. Rather, the proper question is whether the plaintiff's claims "are the *type* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Shearer*, 473 U.S. at 59, 105 S.Ct. at 3043 (emphasis in original); *Millang v. United States*, 817 F.2d 533, 535 (9th Cir.1987), *cert. denied*, 485 U.S. 987, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988). Stewart's lawsuit falls in this category. *See Shaw*, 854 F.2d at 364–65; *Millang*, 817 F.2d at 535. It alleges that a service member acted negligently while discharging his military duties; litigating suits of this type could affect military discipline and decisions. *See id.* Moreover, it is the sort of claim that might involve an assessment of military traffic, vehicle, and other regulations. And in this case and others of its variety, the service members involved, any eyewitnesses, and military medical personnel might have "to testify in court as to each other's decisions and actions." *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2059, 52 L.Ed.2d 665 (1977); *see Shaw*, 854 F.2d at 365.

For these reasons, Stewart's claim implicates all three rationales supporting the *Feres* doctrine. His challenge to the application of *Feres* in this case thus must fail.*

### III.

■ In the broadest sense, the *Feres* doctrine removes military governance from the rubric of civilian tort law. The doctrine has its defenders and its detractors. That it may elicit criticism "does not relieve this court of its obligation to apply precedent." *Appelhans*, 877 F.2d at 313. For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

* We also reject Stewart's attempt to revisit the government's certification that Sergeant Marciano was acting within the scope of his employment when the accident occurred. The scope of employment certification is not an issue in this action—Stewart sued the United States directly under the FTCA. Instead, the certification arose in a prior, wholly separate, proceeding, in which Stewart initially sued Marciano individually, and was not challenged during that proceeding or in the district court here.